# SUPREME COURT.

AMI BREWSTER vs. GILBERT CROPSEY, Sheriff of the county of Rensselaer, IRA ALLEN and THOMAS W. JONES.

## CHARLES M. DAVIS vs. THE SAME DEFENDANTS.

A *mortgagee*, who is junior in lien to a judgment creditor (of the mortgagor) upon whose execution the mortgaged premises are sold, is entitled to the surplus moneys to the amount of his mortgage, although junior judgment creditors to the mortgagee may have had executions in the sheriff's hands prior to, and at the time of the sale, and the premises were purchased at the sale by the mortgagee. The statute relating to the redemption of lands sold upon execution, does not apply to such a case.

A different rule might prevail as to the mortgagee, if the sale was made upon all the executions in the sheriff's hands—junior, as well as senior, to the mortgage.

*Rensselaer Circuit, Dec.* 1849.—Demurrer to the answer of the defendants, Allen and Jones, in each of these suits. The complaint in the first action states, that on the 27th of June, 1848, William P. Van Rensselaer recovered a judgment against the defendant Jones, for $366.67, upon which an execution was issued to the defendant Cropsey, sheriff of Rensselaer, on the 4th day of August, 1848—that on the 19th of January, 1849, the plaintiff in that action recovered a judgment against Jones for $114.27, and on the same day an execution was issued thereon, to the same sheriff—that prior to the issuing of the latter execution the former execution had been levied upon a farm in the town of Berlin, in said county, of which the defendant in the execution was seized—that having given due and legal notice, that he should sell the farm by virtue of an execution, the sheriff on the 21st day of June, 1849, sold the farm to the defendant Allen, who became the purchaser, for the sum of $2740—that Allen paid to the sheriff $425.81 of the purchase-money, being the amount required to satisfy the Van Rensselaer execution and sheriff's fees, and refuses to pay the balance, and the sheriff refuses to institute any proceedings to compel him to do so, and that Jones also assents to, and approves of such refusal; all of them pretending that Allen has lien or incumbrance on the farm, to which he has a right to apply the residue of his bid. The plaintiff demands judgment against the defendants for the amount of his execution against Jones, with interest.

The defendants, Allen and Jones, in their answer state, that on the first day of September, 1848, Jones executed to Allen, his bond in the penalty of $4400, conditioned for the payment of $2200 on the first day of September, 1850, with interest semi-annually, and to secure the payment,

he at the same time executed and delivered to Allen a mortgage upon the farm mentioned in the complaint, which mortgage was duly recorded, and became a lien upon the farm, prior to the lien of the plaintiff's judgment—that the sheriff sold the farm, as stated in the complaint, by virtue of the Van Rensselaer execution and no other—and that after paying that execution and the legal costs and expenses of the sale, the balance of the purchase-money was, with the consent of Jones and the sheriff, applied by Allen to the payment and satisfaction of his bond and mortgage, and after such payment and satisfaction, there remained no surplus.

The complaint and answer in the second action, were in all respects similar to the first, except that the plaintiff's judgment was recovered on the 21st of April, 1849, for $255, and his execution was issued on the 22d of May, in the same year.

To the answer in each action the plaintiff demurred, upon the ground that it does not allege facts which authorize the application of the moneys arising from the sale to the payment of Allen's mortgage and also upon the ground that it does not sufficiently allege an indebtedness of Jones to Allen for the security of which the bond and mortgage were executed.

J. HOLMES, *for plaintiff.*

H. P. HUNT, *for defendants.*

HARRIS, Justice.—The plaintiff's judgments were liens only upon the equity of redemption of Jones in the farm. Upon its sale they could only claim payment out of the surplus which should remain after satisfying the mortgage. If the sale had been made under all the judgments, there might have been more difficulty in protecting the lien of the mortgage, but even then, I think, the mortgagee might have insisted upon having his mortgage satisfied in its order of priority. The sale, however, was under the Van Rensselaer judgment alone. Though when he made the sale, the sheriff had received the plaintiff's executions, he could only sell by virtue of that upon which he had advertised to sell. (*Mascraft* v. *Van Antwerp*, 3 Cowen, 334.) The only advantage which the plaintiffs could derive from having their executions in the hands of the sheriff at the time of the sale, was that he might apply any overplus moneys arising from the sale, to which the defendant in the execution might be equitably entitled, to their payment. But the defendant in the executions had no equitable right to the overplus moneys arising from the sale. As against him, his mortgagee was entitled to receive them, and to the extent of his mortgage the plaintiff had no right at all to them. If the purchase had been made by a third person, I see no reason why the court should not protect the equitable

rights of the mortgagee in the surplus, by directing its application to the payment of the mortgage. The right of the court thus to interfere was asserted in *Williams* v. *Rogers*, (5 John. 163.) See also *Every* v. *Edgerton*, (7 Wend. 259.) These were cases in which the surplus moneys were claimed by an intermediate grantee. But I can see no difference, in principle, between the rights of a grantee and those of a mortgagee in such cases. The question is, who is equitably entitled to the surplus moneys. In the one case, the grantee, by virtue of his conveyance has an absolute right to the whole surplus, whatever the amount. In the other, the mortgagee has an equal right to the surplus to the extent of his lien.

The cases upon which the plaintiff's counsel relies, relate to the operation of the statutes allowing a redemption of lands sold upon execution. That statute has no effect upon the question under consideration. The rights of the parties here are the same as they would have been if no redemption act had been passed. In *Van Rensselaer* v. *Sheriff of Albany*, (1 Cowen, 501,) an attempt was made by a mortgagee, whose lien was junior to that of the judgment upon which the mortgaged premises had been sold, to redeem from the purchaser at the sheriff's sale. It was held that mortgagees were not embraced within the provisions of the act. It had been argued in that case, that if the statute should be so construed as to allow a judgment creditor, and not a mortgagee, to redeem, its effect would be to invert the order of liens so as to give a junior judgment creditor a preference over a senior mortgagee. In answer to this argument, Chief Justice Savage referred to the principle to which I have alluded, and said that if the statute had the effect to invert the order of liens it must be through the negligence of the creditor. If a junior creditor, meaning, undoubtedly, a mortgagee, would secure himself upon a sale under a senior judgment, he must bid the amount of the older execution and his own lien. The same thing is more definitely expressed by Talcott, *arguendo*. "The mortgagee," he says, "should have bid to the value of land. He would then, after paying the judgment, have held the surplus money to pay his mortgage." Not, as I understand it, that it is necessary that the mortgagee should bid off the land—but that he should see that it is not bid off for less than its value, or the amount required for the satisfaction of his lien. Whether he becomes a purchaser, or a third person, he is entitled to have the overplus money, after paying the execution upon which the sale is made, applied to the satisfaction of his lien. Thus, the redemption act, while it furnished a new remedy to junior judgment creditors, left the junior mortgagee to protect his lien in the same manner as before.

The question in *Silliman* v. *Wing*, (7 Hill, 159,) also depended, exclusively, upon the statute. Lands had been sold under three judgments for an amount sufficient to satisfy them all. Fake, who had a judgment which was a lien, junior to one, and senior to the other two, of the judgments, upon which the land was sold, sought to redeem by paying the amount of the prior judgment. It was held that he could only redeem in the manner prescribed by the statute: that is, by paying "the sum of money which was paid on the sale." What would have been the result, if, at the time of the sale, Fake had sought to have the moneys arising from the sale, after paying the prior judgment, applied to his judgment in preference to the two junior judgments, it is not necessary to inquire.

I think, too, that the existence of the bond and mortgage and the indebtedness of Jones to the mortgagee are sufficiently alleged in the answer. My opinion, therefore, is that, upon the issue of law made by the demurrer, judgment should be rendered for the defendants in each action, but with liberty to the plaintiff to reply to the answer of the defendants within ten days after notice of this decision upon the payment of the costs subsequent to the demurrer.