# JOHN HART *et al.*

*v.*

# JACOB WINGART.

1. SALE ON EXECUTION—*interest and rights of purchaser before time for redemption expires.* A judgment creditor has a general lien on all the real estate of his judgment debtor in the county where the judgment is obtained, but upon his becoming the purchaser of a tract under his execution, the general lien is narrowed down to a specific one in the land sold, of as high a dignity as if created by a mortgage, but he is not the absolute owner until after the expiration of fifteen months.

2. DEED OF TRUST—*who entitled to surplus on sale.* Where land is sold under a deed of trust and there is a surplus after satisfying the debt secured by it, and the payment of the costs and expenses of the sale, a purchaser of the land under a sale under a judgment against the grantor, which was a junior lien, who is not entitled to a deed at the date of the sale by the trustee, is entitled to share in such surplus to the extent of the amount of his bid, with ten per cent interest, and the grantor in the trust deed will be entitled to the balance, although his right to redeem from the sheriff's sale had expired when the trustee's sale was made.

3. If, at the time land is sold under a deed of trust, the legal title has passed from the grantor, either by his own deed or by a sheriff's deed, the grantee will be entitled to the whole of any surplus, after discharging the debt secured by the trust deed, and expenses; but if the land has been sold under execution, and the fifteen months allowed for redemption have not expired, the purchaser under the execution will only have a lien on such surplus for the amount of his bid and ten per cent interest.

4. LIEN—*in equity follows proceeds of property.* A junior lien to that of a trust deed will be defeated by a sale under the latter, where the property does not bring a greater sum than will satisfy the debt secured by it, and costs and expenses, but if any surplus is left, the junior lien in equity will attach to it.

APPEAL from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. W. SCOTT AGNEY, and Mr. U. D. MEACHAM, for the appellants.

Mr. J. M. BAILEY, and Mr. J. I. NEFF, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 10th day of January, 1871, Jacob Solt, who owned a tract of land in Stephenson county, of seventy acres, executed a deed of trust to Jacob Hart, as trustee, to secure the payment of a certain promissory note of $350, payable two years after date, with ten per cent interest, to Cyrus A. Sheetz. On the 22d of September, 1871, Jacob Wingart recovered a judgment in the circuit court of Stephenson county, against Jacob Solt, for $237.17. On the 12th day of October, 1871, an execution issued upon the judgment, which was levied upon the land described in the deed of trust, and, after notice, the same was, on March 12, 1872, sold to Wingart for $234.12. On the 9th day of May, 1873, Hart, the trustee, after having given due notice, sold the premises under the power contained in the deed of trust, and the same was purchased by Thos. K. Best for the sum of $1000. As soon as the land had been struck off by the trustee to Best, appellee produced his certificate of purchase and presented it to Hart, the trustee, and gave notice that he was entitled to the surplus in his hands after payment of the debt named in the deed of trust, and costs of sale, and made a demand of the same.

The surplus in the hands of the trustee, after the payment of the debt secured by the trust deed, and the costs and expenses of sale, amounted to $543.60. The demand of Wingart for the surplus money was disregarded by the trustee, and he disposed of the amount by paying an outstanding note against Solt for $243.60, and by paying the remaining $300 over to Solt.

Wingart filed this bill for the purpose of reaching the surplus money, and the circuit court, upon the hearing, decreed that Hart, the trustee, should pay the entire amount of the surplus to the complainant in the bill. To reverse this decree this appeal was taken.

The judgment which appellee obtained against Solt became a lien upon all real estate owned by him in the county where the judgment was rendered, after the adjournment of the term

of court at which the judgment was rendered. Upon the sale of the land the judgment was satisfied, and the general lien of the judgment creditor was narrowed down to a specific one on the tract of land sold. The lien, of course, was subject to the prior deed of trust, and could only be defeated by a sale of the land upon it. By the sale appellee acquired an interest in the land which would ripen into an absolute title, unless the judgment debtor should, within twelve months, redeem by paying the amount for which it was sold and ten per cent interest thereon, or unless judgment creditors should, within three months after the expiration of the twelve months, make redemption as provided by law.

A lien by judgment, although created by statute, is of as high an order as a lien upon land given by a mortgage.

At the time the premises were sold, appellee was a junior incumbrancer, and had the land, at the sale, brought only the amount of the debt secured by the deed of trust, his lien would have been extinguished, and his rights growing out of that lien would have been gone; but the sale produced a large surplus in the hands of the trustee, and the question arises, to whom does that surplus belong?

It will be remembered, at the time the sale was made under the deed of trust, the twelve months in which Solt had to redeem from appellee's sale had expired. He held the naked legal title to the premises, but his right of redemption was gone, and, unless judgment creditors interfered, his legal title would pass to appellee at the end of the fifteen months.

If the sale under the trust deed had not been made until the fifteen months had expired, and appellee had obtained a sheriff's deed, it is clear the trustee would have been required to pay the surplus money to appellee, as he would then have succeeded to all the rights of Solt in and to the premises. Appellee, in such case, would, in effect, have been the grantee of Solt, who had parted with all right and interest in the premises. But when the sale was made appellee had a specific lien on the premises for the amount of his bid, and ten per cent interest thereon. That lien could not be destroyed by any act

on the part of Solt. When the sale was made under the trust deed, and a surplus came into the hands of the trustee, the lien of appellee was transferred from the land to that surplus.

The parties occupied this relation: Solt held barely a legal title to the tract of land; the deed of trust was the first lien on the premises for the amount thereof. Appellee, by virtue of his judgment and sale, had a second lien on the premises for the amount of his bid. The trustee had the power to convert the land into money under the power of sale contained in the deed of trust. Under that power he converted the land into money. How should the proceeds be disposed of? The answer to the proposition is obvious. The lien of the trust deed was prior on the land, and that has the prior lien on the proceeds of the premises for payment. The lien of appellee, which was his bid and ten per cent interest thereon, was the second lien on the land, and will share in the proceeds after the deed of trust and expenses of sale have been paid. The balance of the proceeds of sale would then pass to Solt, as he then held the legal title. This rule is equitable. It metes out justice to all the parties concerned in the premises, and is, as we believe, fully sustained by the authorities.

In *Van Nest* v. *Yeomans,* 4 Wendell, 87, where real estate was sold in satisfaction of a judgment which was the first lien upon the property, and a surplus was left in the hands of an officer, it was held that a junior judgment creditor was entitled to the surplus, notwithstanding the defendant in the prior judgment had given the sheriff an order to pay the surplus moneys to another creditor. The same doctrine was held in *The People* v. *Ulster,* 18 Wend. 628.

In *Bartlett* v. *Gale,* 4 Paige, 504, it was held that a mortgage being a specific lien upon the mortgaged premises, if such premises are sold under a prior judgment, the lien of the mortgage attaches upon the surplus moneys in the hands of the sheriff, who has no right to pay such surplus to the mortgagor; and if the purchaser is permitted to retain the surplus moneys in satisfaction of an antecedent debt due from the mortgagor, he takes it subject to the specific lien of the mort-

gage, although he has neither actual nor constructive notice of the mortgage.

In *Snyder* v. *Stafford*, 11 Paige, 71, it was decided that when mortgaged premises have been sold at a sheriff's sale, under a junior judgment to the mortgage, and where the time for redemption has not expired, the general lien of the judgment is turned into a specific lien upon the premises to the extent of the amount of the bid at the sheriff's sale, and of the interest thereon; and after a sale under a decree foreclosing the mortgage, such specific lien would be entitled to a preference in the distribution of the surplus moneys arising from the sale.

See, also, the following authorities, where the same principles are announced: *In matter of Scrugham*, 1 Hopk. Ch. R. 88; *Clarkson* v. *Skidmore*, 46 N. Y. 297; in *Douglas' Appeal*, 48 Pa. St. 222; in *Fry's Appeal*, 76 ibid. 82; *Brewster* v. *Cropsey*, 4 How. Pr. 219.

Authorities might be multiplied bearing on the same question, but further citations are not deemed necessary, as our own court has recognized and acted upon the same principle. In *Montgomery* v. *Brown*, 2 Gilman, 581, where the question arose as to the proper and necessary parties to a bill to foreclose a mortgage, it was said: "All persons having an interest in the equity of redemption, and in the distribution of the surplus, are highly proper, if not indispensable, parties. Such are subsequent purchasers and incumbrancers; they are entitled to redeem. They have the right to show payment of the mortgage, or any other matter which will lessen the amount required to redeem or increase their interest in the surplus. If a sale is ordered, the surplus, instead of going to the mortgagor, should be applied, in the first place, to the extinguishment of their liens."

So too in *Ellis* v. *Southwell*, 29 Ill. 549, it was held that when a sale is made under the foreclosure of one of several mortgages, the only question is as to the equitable distribution of the proceeds. The surplus might be disposed of on appli-

cation, to an incumbrancer not made a party to the suit, if it appeared that, in equity, he was entitled to receive the fund.

If, in this case, a bill had been filed to foreclose the trust deed appellee would have been an indispensable party to the proceeding, and, as a party thereto, his right to share in the surplus proceeds of the sale of the mortgaged premises, in preference to the mortgagor, by virtue of his lien, can not be doubted. The mere fact, therefore, that the trust deed was foreclosed under the power of sale therein specified, without resorting to a court of equity for a decree, can not divest appellee of his equitable rights, when he invokes the aid of a court of chancery.

Appellee, however, obtained a decree for the entire amount of the surplus. That decree can not be sustained. The extent of his lien at the time the land was sold under the deed of trust, and the surplus money came into the hands of the trustee, was the amount he had bid for the premises when sold upon his judgment, and ten per cent interest thereon.

Suppose the deed of trust had been foreclosed in a court of equity, and appellee had set up his right as a subsequent incumbrancer to share in the surplus. The time for redemption not having expired under his sale, he could have obtained no greater amount than the extent of his interest in the premises, which was the amount he had bid, with ten per cent interest. The same rule that would govern in that case must prevail here, as the principle in either case is the same.

The decree will, therefore, be reversed, and the cause remanded with directions to enter a decree in conformity to this opinion.

·  *Decree reversed.*