THE ILLINOIS NATIONAL BANK *et al.*

*v.*

THE TRUSTEES OF SCHOOLS.

*Opinion filed October 24, 1904.*

1. INTEREST—*clause of note construed as to when interest falls due.* The clause, "with privilege of paying one or more thousand at interest date," contained in a note for $13,000 payable five years from date, with interest at six per cent, does not make the interest on such note payable annually, if not otherwise declared.

2. APPEALS AND ERRORS—*when objection that no interest was due on note comes too late.* If the allegations of a foreclosure bill are *prima facie* sufficient to sustain a decree of foreclosure, failure to object, by answer or demurrer, that the interest for non-payment of which complainant elected to foreclose was not due by the terms of the note is a waiver of the objection, and it cannot be urged on appeal.

3. SAME—*facts relied upon for reversal should be shown in abstract of record.* Alleged failure of the note and mortgage to sustain the allegations of the bill should be made to appear in the abstract of record, otherwise it will be presumed, on appeal, that the chancellor heard sufficient evidence upon which to base his findings and decree.

4. MORTGAGES—*junior mortgagee may redeem from senior mortgage.* A junior mortgagee has the right, not only under section 18 of the act relating to judgments and decrees, but also in equity, to redeem from the senior mortgage on foreclosure, or pay it off, and thereby become subrogated to the rights of the senior mortgagee.

5. SAME—*when a creditor must redeem from both mortgages.* Where a junior mortgagee, after purchasing the property at his own foreclosure for the full amount of his debt, subsequently redeems from the senior mortgage, a judgment creditor whose lien is junior to that of both mortgages is not entitled to redeem from the junior mortgage only, but must redeem from both.

6. SAME—*judgment creditor can redeem only under section 20 of statute.* A judgment creditor, even though his lien is prior to a junior mortgage, can redeem from a sale under the senior mortgage only under section 20 of the act relating to judgments and decrees.

7. JUDGMENTS AND DECREES—*how lien of judgment may be made specific.* Where there is a prior mortgage upon the judgment debtor's property, the judgment creditor may levy his execution upon the mortgaged property subject to the mortgage, and thus

make his general lien a specific one of as high a dignity as if it had been created by a mortgage.

8. SAME—*general lien of judgment does not extend to surplus after foreclosure.*  The general lien of a judgment arising from the mere issuing of an execution, under which no levy or sale was made, does not. extend to the surplus remaining after a foreclosure sale to satisfy a prior mortgage upon the judgment debtor's land.

*Ill. Nat. Bank* v. *Trustees of Schools,* 111 Ill. App. 189, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Montgomery county; the Hon. WM. M. FARMER, Judge, presiding.

BROWN, WHEELER, BROWN & HAY, for appellants.

LANE & COOPER, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On December 19, 1898, appellees, trustees of schools, etc., filed their bill in the circuit court of Montgomery county to foreclose a mortgage executed to them by Lewis H. Thomas and wife on, among other lands, the east half of section 3, town 12, range 5, west of the third principal meridian, in said county, to secure the payment of an indebtedness of $13,000 evidenced by a promissory note by the mortgagor Lewis H. Thomas, payable to the mortgagees five years after date, the note and mortgage bearing date July 2, 1897, and the latter duly recorded July 5, 1897.  To this bill the Illinois National Bank and Presley M. Johnson, with other parties, were made defendants, under the allegation that they had, or claimed to have, some interest in the mortgaged premises, and alleging, if any such interest existed, it had been acquired subsequent to the complainants' mortgage, the prayer of the bill being that said defendants, and all persons claiming under them subsequent to the complainants' mortgage, be barred and forever foreclosed. · The Mutual Benefit Life Insurance Company entered its appearance in that ac-

tion, and filed its answer setting up two prior mortgages executed by Thomas and wife to one J. B. Russell on December 24, 1895, each to secure the payment of $5000, subsequently assigned to the defendant the Mutual Benefit Life Insurance Company. The Illinois National Bank filed its answer, setting up a judgment rendered in its favor by the circuit court of Sangamon county against Thomas and wife on July 1, 1897, for $7101.35 and costs, and the filing of a transcript of the same in the office of the circuit clerk of Montgomery county July 2, 1897, and averring "that said judgment is a lien upon all lands described in the bill prior and superior in equity to complainants' mortgage." It at the same time filed a cross-bill, but it presented no issue important to be considered in the decision of this case.

Pending this action, on July 26, 1900, the Mutual Benefit Life Insurance Company filed two bills in the said circuit court to foreclose the two mortgages set up in its answer to the bill of the trustees of schools. Presley M. Johnson, the assignee of the judgment set up in the answer of the Illinois National Bank, and the trustees of schools, were made parties defendant to both bills. Johnson was defaulted in both actions, but the trustees of schools filed their answer. A decree of foreclosure was entered in favor of the complainant, in which the amount due the trustees of schools was ascertained and stated. A decree was rendered upon both of those bills, finding that the rights of the Illinois National Bank and Johnson were subsequent to the right of the complainant insurance company; that the trustees of schools held a second mortgage on the premises, and had the right to redeem from the sale under said decree within twelve months from the date of sale, and it further provided if such redemption was not made within twelve months, any judgment creditor of said Thomas might redeem after twelve months and within fifteen months from the date of sale. That decree was rendered on the .... day of ........, 1901. Thereafter, on the 8th day of February, 1901, a decree was rendered in favor of the trustees of schools, in which decree it was found that the

rights of the complainants, the trustees of schools, in the premises were senior to the rights of Presley M. Johnson, assignee of the bank judgment, and a sale of the land was ordered to be made by the master in chancery, and after the payment of costs, etc., he pay to the complainants the amount found due, together with interest thereon from the date of the decree to the day of sale, or if the remainder should prove insufficient to pay the whole of the decree, then that he apply the balance to the extent to which it would go in satisfaction of the same and report any deficiency to the court in his report of sale. A sale on the two decrees in favor of the Mutual Benefit Life Insurance Company was made on February 2, 1901, and the complainants bid in the premises at the full amount of their debt and costs, and received certificates of purchase from the master, entitling them to deeds for the premises sold, in fifteen months, if the property was not redeemed according to law. That sale was duly reported to the court by the master and approved.

On the 8th day of January, 1902, within twelve months after said sales, the trustees of schools assigned their decree to G. J. Little, and he on the same day paid to the master in chancery the sum of $12,845.89 in redemption of the premises from the two sales of February 2, 1901, and the master delivered to him a certificate of redemption of each of said sales for the premises sold, both of which certificates were duly filed for record in the recorder's office of said county. The master thereupon paid the $12,845.89 to the life insurance company in satisfaction of the amount due it. He then, in obedience to the decree in favor of the trustees of schools, advertised the premises for sale, and on February 10 struck off and sold the same in separate quarter sections to the said Little for the sum of $24,000, and upon compliance with the terms of the sale delivered separate certificates of purchase for each separate quarter section of land, entitling the purchaser to deeds to the same if not redeemed within fifteen months from the date of the sales. At the following April term of said court the master presented his report of sale,

which, upon objections by the Illinois National Bank and Presley M. Johnson, was referred back to him with directions to make a more complete report of the facts relating to the redemption, which he subsequently did, reporting the amount paid the insurance company for redemption $12,845.89, interest on same from date of redemption to date of sale $70.64, amount credited on decree of trustees of schools $10,895.48, and costs paid $187.99, making a total of $24,000,—the amount bid by Little at said last mentioned sales,—and leaving a balance due on the decree of the trustees of schools of $2035.95. To this report exceptions were filed by Presley M. Johnson and the Illinois National Bank, the one mainly relied upon in this litigation being, that the master should have retained in his hands the $10,880.50, the same being the balance of the amount for which the premises were sold after the payment of the former decrees, interest and costs. The exceptions were overruled by the court and the objectors excepted, and from the order approving the master's report prosecuted an appeal to the Appellate Court for the Third District. They had previously sued out a writ of error from that court to review the proceedings and decree rendered in the suit of the trustees of schools against Thomas *et al.* The two cases were consolidated in the Appellate Court and heard together, and the decree of the circuit court, and also its order approving the master's report, were affirmed. On this appeal the cases have again been consolidated, and submitted on one set of abstracts, briefs and arguments.

On this appeal two grounds of reversal are urged: First, that the note given by Thomas to the trustees of schools was an undertaking on the part of Thomas to pay $13,000 five years after date, with six per cent interest from date; that the interest was not payable annually, and therefore the provisions of the mortgage authorizing the mortgagees to declare the whole amount due and payable for a failure to pay the interest, or any part thereof, when due, could not be availed of by complainants, and therefore the bill was prematurely filed. On the other hand, the mortgagees insist that

by the terms of the note and mortgage the interest was payable annually, and hence they had a right to declare the whole amount due for the non-payment of the first year's interest, and file their bill, as they did, some seventeen months after the execution of the note. .This is a copy of the note:

"13,000.00.                    FARMERSVILLE, ILL., *July 2, 1897.*

"Five years after date I promise to pay to the order of the trustees of schools of town 12, range 5, thirteen thousand dollars, for value received, payable at the Farmersville Bank, with six per cent interest from date, with the privilege of paying one or more thousand at interest date.

                                        LEWIS H. THOMAS."

The mortgage provides: "But it is expressly provided and agreed that if default be made in the payment of said promissory note, or any part thereof, or the interest thereon, or any part thereof, at the time and in the manner above specified for the payment thereof, etc., then and in such manner the whole of said principal and interest secured by said one promissory note in this mortgage mentioned shall thereupon, at the option of said mortgagees, etc., become immediately due and payable."

There is force in the contention of counsel for appellants that on the face of the note the interest did not fall due until the maturity of the note, and if the question had been properly raised and preserved in the circuit court we would be disposed to so hold. Without the language "with the privilege of paying one or more thousand at interest date," there could reasonably be no other contention. That language does not fix the date when interest shall be payable, and would be just as consistent with a claim that the interest was payable semi-annually, or every two years, as that it was payable annually. The statute relied upon by counsel for appellees does not aid their construction. It simply fixes the rule for computing the rate of interest, but does not purport to fix the date at which it shall be payable.

It cannot, however, be said that the proper construction of the note, together with the foregoing clause of the mortgage as to when the interest should become due and payable,

is altogether free from doubt, and the complainants below, by their bill, set up the construction then and now insisted upon by them, as follows: "Your orator further shows that in and by said mortgage it is provided, among other things, as follows: That if default be made in the payment of the said one promissory note, or any part thereof, or the interest thereon, or any part thereof, at the time or in the manner above specified for the payment thereof, or in case of waste or non-payment of taxes or assessments, or a breach of any of the covenants or agreements herein contained, then and in such case the whole of said principal and interest secured by the said one promissory note in this mortgage mentioned shall thereupon, at the option of the said mortgagees, their heirs, executors, administrators, attorneys or assigns, become due and payable; *and the complainant avers that default having been made in the payment of the interest due on said note, or any part thereof, it has elected to declare the whole of said note, principal and interest, due, and to foreclose said mortgage."*

Appellants failed to object, either by demurrer or answer to the bill, that no interest was due at the time it was filed, and by the well understood rules of chancery practice they could not be heard to raise that objection in the Appellate Court or here. It cannot, we think, be seriously contended that the allegations of the original bill, unchallenged, were not sufficient to sustain the decree of foreclosure. If that decree had been entered by default, it would scarcely be insisted that it could be set aside for want of sufficient allegations to sustain it. The original bill being on its face sufficient to give the court jurisdiction to grant the relief prayed, the supplemental bill setting up default in the payment of taxes as an additional reason for declaring the whole amount due was properly filed. Moreover, appellants have failed to file an abstract of the mortgage or note upon which the bill was filed. If there was not sufficient evidence produced to authorize the decree or if the mortgage and note did not sustain the allegations of the bill, those facts should be made to

appear from the abstract of the record, and in the absence of
such showing we must presume that the chancellor heard suf-
ficient evidence upon which to base his findings and decree.

It is insisted, secondly, that as the bill alleged that the
Illinois National Bank claimed some interest in the mort-
gaged premises, which interest accrued subsequent to the lien
of the complainants' mortgage, and the answer of the bank
denied the allegation and set up specifically the interest
claimed by it, showing the same to have accrued before that
of complainants' mortgage, and the court being powerless to
pass upon the rights or titles acquired previous to the lien
of complainants' mortgage, the only proper parties to a bill
of foreclosure being the mortgagee and mortgagor and those
who have rights or interests acquired under them subsequent
to the mortgage, no order could be made binding upon the
Illinois National Bank except to dismiss it out of the case.
The record does not show the state of facts thus assumed.
The answer of the defendant bank simply alleged that it had
a prior judgment lien, to which answer the complainants
filed their replication, thus putting the defendant upon proof
of the allegations of its answer.   The record wholly fails to
show that any such proof was made upon the hearing.   In
fact, there is no bill of exceptions or certificate of evidence in
the case.   There is nothing here, therefore, to show that the
decree of the circuit court is not in conformity with the law.
*Kehm* v. *Mott,* 187 Ill. 519.

Our conclusion, then, is, that the Appellate Court prop-
erly affirmed the decree of the circuit court in the foreclosure
proceeding.

In the appeal from the order approving the master's
report of the redemption by Little it is contended that his
redemption had the effect simply to pay off the lien of the
Mutual Benefit Life Insurance Company and re-establish
the title in Thomas free from the first lien, leaving the prem-
ises subject to subsequent liens in their order of priority, and
that the lien of the Illinois National Bank judgment was
senior to that of the mortgage of the trustees of schools, and

therefore it was error in the circuit court to permit the amount realized from the sale under the decree of the trustees of schools, to the amount of $10,880.50, to be paid to Little, assignee of said decree.   In the first place, the junior mortgagee had the right, not only under section 18 of chapter 77 of our statutes, but in equity, to redeem from the senior mortgage or pay it off, and thereby become subrogated to all the rights of the Mutual Benefit Life Insurance Company under its mortgages.   Thus, in *Ebert* v. *Gerding,* 116 Ill. 216, we held, that where a junior encumbrancer, in order to protect his own security, is compelled to discharge a prior mortgage, he will in equity become subrogated to the rights of the holder of the prior encumbrance.   In such case, the person discharging the superior lien will be treated as its purchaser or assignee, unless the facts show that it was intended as an absolute payment.   To the same effect is *Ogle* v. *Koerner,* 140 Ill. 170.   In Jones on Mortgages (5th ed. sec. 878,) it is said : "Where a mortgagee has been compelled, for his own protection, to pay the amount of a prior mortgage upon the property, and instead of taking an assignment of the mortgage so paid, which is discharged of record, he is nevertheless entitled to indemnify himself for this payment out of the mortgaged estate. * * * When a junior encumbrancer redeems from a prior lien, intermediate or subsequent encumbrancers in equity must refund the redemption money or pay all liens anterior to theirs before they can enforce their claims upon the property.   The junior mortgagee, by redeeming from the prior mortgage, is subrogated to the rights of the first mortgagee."   "A mortgagee who has paid a prior mortgage or other encumbrance upon the land is entitled to be paid this amount, as well as his own mortgage, when the mortgagor comes to redeem.   In addition to the rights the mortgagee had before, he is subrogated to those which were a charge upon the land in the hands of the prior encumbrancer whom he had paid, whether such encumbrance is a mortgage, a judgment or a rent charge."   (Ibid. sec. 1080.)

Counsel are also mistaken in the assumption that upon this record the judgment of the bank is paramount to the mortgage of the trustees of schools. The court, as shown from the foregoing statement, expressly found the contrary, holding by its decree that the rights of the complainants in that bill (the trustees of schools) were senior to those of Johnson and the bank, and in the absence of proof to the contrary that finding and decree are conclusive. As before said, there is no certificate of evidence in this record, and no proof from which it can be said that the finding and decree of the circuit court in that regard are not correct. Therefore the case is substantially like that of *Flachs* v. *Kelly,* 30 Ill. 462. There, premises were mortgaged to Keller & Roth on July 7, 1855, and, subsequently, to the appellant on February 28, 1860. Chatten obtained a judgment, which became a lien on the premises in October of the latter year. At the March term, 1861, Keller & Roth foreclosed the senior mortgage and sold under their decree for the full amount of their debt. At the same term appellant obtained a decree of foreclosure under his second mortgage, subject to the prior mortgage and permitting him to redeem therefrom. Under this foreclosure the appellant bought the land for the amount of his debt and within the year redeemed from the sale under Keller & Roth's prior mortgage. Thereafter Chatten, the judgment creditor, levied upon and sold the property under an execution issued upon his judgment, and claimed the right to redeem from appellant's sale under the second mortgage by paying the amount of the sale. It was held that appellant, by redeeming from the sale under the first mortgage, had not extinguished that lien but was subrogated to the rights of the first mortgagee, and that the judgment creditor must redeem from both mortgages. So here, the judgment lien of the bank having been found junior to appellees' mortgage, the bank was not entitled to any part of the fund in the hands of the master in chancery until both mortgages were satisfied.

There is another view under which the order approving the master's report must be sustained. As we have seen, the

appellees were entitled to redeem from the sales under the senior mortgages, which, under section 18, they were bound to do within twelve months from the date of the sale. The bank, even if its lien had been prior to appellees' mortgage, could only have redeemed from the sales under the senior mortgage under the provisions of section 20 of chapter 77, *supra.* This it is not claimed it has done or now seeks to do. It might also have levied an execution, under its judgment, upon the mortgaged premises subject to the senior mortgages, and thus made its general lien a specific one on the premises of as high a dignity as if its lien had been created by a mortgage. (*Hart* v. *Wingart,* 83 Ill. 282.) But it is not claimed that any such proceedings have been had under the judgment. All that it claims is, that by filing a transcript of the judgment in the office of the circuit clerk of Montgomery county and causing an execution to issue thereon it acquired a general lien on all the property of Thomas in that county. The lien upon the mortgaged premises was, however, only upon Thomas' equity of redemption or a lien subject to the senior mortgages of the Mutual Benefit Life Insurance Company. In *Pahlman* v. *Shumway,* 24 Ill. 128, Rossiter and wife had executed a trust deed to Shumway on the 12th of March, 1857. The indebtedness secured by the trust deed was evidenced by notes of the same date, for $2000 each, due in twelve months, with interest, etc. Default was made in the payment, and Shumway caused the premises to be sold, for which the sum of $30,000 in cash was bid. After paying the mortgage indebtedness, costs, expenses and commissions, the trustee held a balance of several thousand dollars. Miller & Davis obtained judgment against Pahlman at the November term, 1857, of the superior court for $1037.18, and on April 5, 1858, sued out an execution directed to the sheriff of Cook county, and delivered to him, which in July following was returned unsatisfied. They insisted that by their judgment they acquired a lien upon the premises in the deed of trust subject to the indebtedness secured by it, and that they had an equitable lien on the surplus in the hands of Shumway to the amount of

their judgment, and that it was prior and better than the claims of creditors of the estate of Rossiter, who had died prior to the sale under the trust deed. In the decision of the case it was said (p. 132) : "The first question presented by this record is, were the judgments against Rossiter liens upon the equity of redemption or residuary interest which he had in the land conveyed in trust, or upon the right he had to the surplus of the purchase money after the payment of the debt secured by the deed of trust? If they were such liens, then the court very properly appropriated the surplus to their satisfaction. If they were not such liens, then the surplus should have been decreed to the executors of Rossiter, to be distributed among his creditors generally, under the 115th section of the Statute of Wills. Our conclusion is, that these judgments were liens upon the residuary interest of Rossiter in the land. They were a lien on the land subject to the encumbrance of the trust deed, but to make the lien available it should have been enforced against the land by a levy and sale subject to the encumbrance. This the judgment creditors did not do, but suffered the land to be sold to satisfy the encumbrance, which effectually cut off the liens. The encumbrance being prior in time, a sale to satisfy it had the effect to convert the land into money, upon which the judgments were not a lien and therefore entitled to no priority of payment." See, also, *Conard* v. *Atlantic Ins. Co.* 1 Pet. 443.

In any view of the law applicable to this case we are of the opinion that the circuit court did not err in its order approving the master's report, and that the judgment of the Appellate Court, affirming both the decree of foreclosure and such order, is in conformity with the law and facts of the case. The latter judgment will accordingly be affirmed.

*Judgment affirmed.*