Illinois National Bank of Springfield, as Trustee Under Trust Created by Trust Agreement Between Robert F. Brown and G. Lewis Lloyd, Dated July 7, 1921, for King's Daughters' Home for Aged Women, W. T. Burnside, as Assignee and W. T. Burnside, Individually, Plaintiffs, v. A. Lee Gwinn, Individually, and as Trustee Under and by Virtue of Certain Deed Dated April 24, 1922, and Recorded in Book 94 of Deeds at Page 18 in Recorder's Office of Douglas County, Illinois; Andrew Burkey Gwinn and Elmer Ellsworth Gwinn, Jr., et al., Defendants.

Elmer Ellsworth Gwinn, Jr., and Janice Conkey Portwood, Administrator of Estate of Elmer Ellsworth Gwinn, Jr., Deceased, Petitioners-Appellants, v. Emerson L. Gwinn, Successor Trustee to A. Lee Gwinn, as Trustee Under and by Virtue of a Certain Deed etc., and William D. Burnside, Administrator of Estate of William T. Burnside, Deceased, Defendants-Appellees, and Perry M. Chadwick and John R. Chadwick, Intervening Petitioners-Appellees.

Emerson L. Gwinn, Successor Trustee, Defendant-Appellant, v. Elmer Ellsworth Gwinn, Jr., Janice Conkey Portwood, Administrator of Estate of Elmer Ellsworth Gwinn, Jr., Deceased, Appellants in Original Appeal, and William D. Burnside, Administrator of Estate of William T. Burnside, Deceased, Perry M. Chadwick, and John R. Chadwick, Appellees.

Gen. No. 9,825.

Opinion filed June 10, 1952. Rehearing denied September 22, 1952. Released for publication September 22, 1952.

ARTHUR J. B. SHOWALTER, and FILSON & WILLIAMSON, all of Champaign, for appellants.

H. F. SIMONSON, of Champaign, for successor trustee.

J. L. SULLIVAN, of Paris, and NICHOLS & JONES, of Tuscola, for appellees.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This cause comes to this court on appeal from the circuit court of Douglas county. The appeal was first taken to the Supreme Court of Illinois, but that court held that it was wrongfully appealed to the Supreme

Court and by its order of October 8, 1951, transferred the cause to this court.

The original proceeding was a foreclosure by the *Illinois National Bank of Springfield, as Trustee v. A. Lee Gwinn, Trustee, et al.* Since the proceedings in that case bear directly upon the issues in this case, some of the pertinent facts must be set forth.

The property involved in that proceeding was formerly owned by Elmer E. Gwinn and on April 24, 1922, Elmer E. Gwinn conveyed the property by warranty deed, joined by his wife, to A. Lee Gwinn, as trustee. This deed after reciting that there were mortgages and other liens against the real estate conveyed, and that the said Elmer E. Gwinn was heavily involved financially and was unable to meet his obligations, authorized and directed A. Lee Gwinn, as trustee to take possession of the property and to manage and control the same, either by personal supervision or by renting the same. The trustee was given power to extend the existing obligations, and to make new notes and mortgages and to sell, if necessary in order to discharge the obligations of Elmer E. Gwinn. The trustee was to retain a fee and out of the income of the trust, the grantor should receive an amount necessary to support him and his family in a reasonable way during the term of the trust. If all indebtedness was paid before the death of Elmer E. Gwinn, then the trustee, after paying all expenses and fees, should convey one-third of the property to the said Janice Gwinn if she was then living and the widow of him, the said Elmer E. Gwinn, for her life only, and the balance to his bodily heirs, excluding one Andrew Burkey Gwinn, a son, on the ground that he had received his share of his father's estate. There were other provisions of the trust, but they are not important here. Elmer E. Gwinn died April 2, 1941, leaving surviving him only Andrew Burkey Gwinn and Elmer Ellsworth Gwinn, Jr. Jan-

12

ice Gwinn, who was on April 24th, 1922, the wife of Elmer E. Gwinn, the grantor, had on March 15, 1928, obtained a divorce from Elmer E. Gwinn and was at the time of the death of Elmer E. Gwinn, married to and the wife of one Mack Portwood.

The trustee A. Lee Gwinn, in pursuance of the powers granted him by the trust, made his trustee note to the Illinois National Bank of Springfield in the principal sum of $32,000 payable five years after date, with interest at the rate of six per cent, together with mortgage on the trust property securing same.

On May 5, 1941, the Illinois National Bank of Springfield, filed its complaint for foreclosure of the $32,000 mortgage, making among others, Andrew B. Gwinn, Elmer Ellsworth Gwinn, Jr., Janice Gwinn Portwood, parties defendant. Decree for foreclosure and sale was entered January 9, 1942. On February 16, 1942, the master reported sale for $43,000 to the plaintiff, the Illinois National Bank of Springfield, with deficiency of $7,205.03. The sale was approved with finding that there was still due plaintiff the sum of $7,205.03 but no deficiency judgment was entered. The certificate of purchase was assigned to one W. T. Burnside.

On February 16, 1943, Andrew Burkey Gwinn, although he had a junior mortgage note of the trustee, secured a judgment note from A. Lee Gwinn, Trustee and reduced this note to judgment by confession. An execution was issued and placed in the hands of the sheriff with $45,594.36 for the purpose of making redemption from the master's sale of February 16, 1942. A certificate of redemption was issued February 18, 1943; the sheriff made a levy under the execution, and on March 19, 1943, the property was sold to W. T. Burnside for $51,616.32. There being no further redemption, the sheriff on October 25, 1943, delivered his deed to Burnside who then took possession of the

property. On June 8, 1943, the foreclosure case was ordered stricken from the docket.

On April 24, 1944, on motion of Elmer Ellsworth Gwinn, Jr., the foreclosure proceedings were reinstated on the docket. Elmer Ellsworth Gwinn, Jr., at the time of the commencement of the foreclosure proceedings and continuously until the time of the motion to re-instate and afterwards, was a member of the U. S. Navy and in the armed forces of the United States and as such service man was entitled to all rights and relief afforded men in service under the Soldiers and Sailors Civil Relief Act, as amended. Elmer Ellsworth Gwinn, Jr., tendered in open court the sum of $49,049 and asked to redeem the property. On August 22, 1944, the court ordered that the master accept the tender and issue a certificate of redemption. That order was appealed to the Supreme Court of the State of Illinois and that court, in *Bank of Springfield v. Gwinn*, 390 Ill. 345, held that while the trustee, A. Lee Gwinn, held the legal title, the equitable title under the terms of the trust was vested in Elmer Ellsworth Gwinn, Jr. That under the Soldiers and Sailors Civil Relief Act, no part of the time of service of Elmer Ellsworth Gwinn, Jr., could be included in computing the time allowed for redemption and that Elmer Ellsworth Gwinn, Jr., was entitled to redeem.

While the appeal to the Supreme Court was pending, the trustee and Elmer Ellsworth Gwinn, Jr., brought a suit in the circuit court of Douglas county for accounting and other relief against W. T. Burnside, for the profits and issues of the farm while held by said W. T. Burnside, from the time he took possession until the time of the redemption. Before this suit was decided by the trial court, Elmer Ellsworth Gwinn, Jr., was reported missing in action and later by letter of the Navy Department declared probably dead. His mother Janice Conkey Portwood was

14

appointed administrator of his estate and substituted in the action. The original trustee, A. Lee Gwinn had died and Emerson L. Gwinn was appointed successor trustee.

On October 9, 1945, Perry M. Chadwick and John R. Chadwick, filed their motion to intervene in the accounting suit, setting out that they held two notes in the amount of $500 each, with interest, which notes were secured by second mortgage to one H. E. Conover, against the land conveyed in the original trust to A. Lee Gwinn. The mortgage to Conover was a second mortgage and that the amount due the Chadwicks was $1,969.62.

It appears that the original trustee A. Lee Gwinn had made other loans besides the note and mortgage to the Illinois National Bank of Springfield and had secured these other loans by a second mortgage on the trust property, the second mortgage securing the Chadwick notes, one note to R. Allan Stephens and Logan Hay in the amount of $1,000 and one to Andrew Burkey Gwinn in the amount of $1,972.75, or a total of notes and liens of $3,972.76. These loans were also for the purpose of paying off indebtedness of Elmer E. Gwinn, the grantor.

Stephens and Hay had assigned their interest to W. T. Burnside. The Andrew Burkey Gwinn judgment had been paid by W. T. Burnside, so that Burnside was subrogated to the rights of Andrew Burkey Gwinn.

The Illinois National Bank of Springfield had assigned all its interest in the deficiency resulting from the original master's sale in the sum of $7,205.03 to W. T. Burnside.

On these loans, by order of court, the trustee A. Lee Gwinn had paid certain amounts out of a balance in his hands.

The various matters were referred to a master and the master took proofs and made recommendations

15

to the court and on December 28, 1950, the trial court entered a decree which provided substantially as follows: That there was due W. T. Burnside on the mortgage deficiency after allowing all credits, the sum of $3,900.60; that there was due W. T. Burnside on the Hay and Stephens note after allowing all credits, the sum of $1,940.69; that there was due W. T. Burnside on the Andrew Burkey Gwinn note after allowing all credits, the sum of $4,189.99; that interest could not be charged W. T. Burnside on the funds in his hands after June 20, 1944, and that W. T. Burnside was not entitled to interest on the claims in his hands after June 20, 1944; that W. T. Burnside was not entitled to set off the sum of $1,749.23 for improvements and taxes paid by him while in possession of the property; that there was in the hands of W. T. Burnside, the sum of $13,130.63 which should be distributed as follows: W. T. Burnside to take credit of $3,900.60 for the deficiency held by him, $1,940.69 for the Hay and Stephens note, $4,189.99 for the Andrew Burkey Gwinn note and to pay the balance in his hands amounting to $3,099.35 to Emerson L. Gwinn, successor trustee. Emerson L. Gwinn, successor trustee should pay to Perry M. Chadwick and John R. Chadwick within 20 days of receipt of the balance from W. T. Burnside, the sum of $2,160.33 and confirmed the deed of conveyance to Elmer Ellsworth Gwinn, Jr., from A. Lee Gwinn, trustee, on condition that the said sum of $2,160.33 be paid to the two Chadwicks.

From this order of the court dated December 28, 1950, Janice Conkey Portwood, administrator of the estate of Elmer Ellsworth Gwinn, Jr., deceased, appeals. Emerson L. Gwinn, successor trustee files a separate appeal. W. T. Burnside and the intervening petitioners Perry M. Chadwick and John R. Chadwick, file their cross-appeal.

16

Without setting forth in detail all of the errors assigned, they may be generally grouped for the purpose of this appeal as follows:

1. Did the court err in ordering payment to the Chadwicks and that payment be made before confirming the conveyance to Elmer Ellsworth Gwinn, Jr.?

2. Did the court err in giving W. T. Burnside credit for the amounts held due on the deficiency, the Andrew Burkey Gwinn note and the Hay and Stephens note?

3. Did the court err in refusing to allow W. T. Burnside credit for money paid for taxes and improvements while in possession of the property?

■ It is the opinion of this court that error was committed in ordering the payment of the sum of $2,160.33 to Perry M. Chadwick and John R. Chadwick and imposing a condition upon the confirmation of the deed from the trustee to Elmer Ellsworth Gwinn, Jr. for the reason that their rights were determined by the foreclosure suit in the first instance. In that suit they were served with process of summons and defaulted. By that proceeding, their rights were adjudicated and because they defaulted, nothing was found to be due them. If they had any rights, these rights should have been urged and adjudicated in the foreclosure.

■■ The trial court was correct in the position that W. T. Burnside should be given credit against the moneys in his hands for the Andrew Burkey Gwinn note and the Hay and Stephens note and also the deficiency amount due, which had been assigned to him. These claims had been adjudicated and there was a finding by the court as to the junior mortgage notes and the deficiency. We think the case of the *Bank of Springfield v. Gwinn,* 390 Ill. 345, has already determined these points. In that opinion the court said: "As we have heretofore pointed out, Elmer Ellsworth Gwinn, Jr., was the equitable owner of the property,

17

*subject to all of the indebtedness of the trust estate,* his interest in the property becoming vested immediately upon the death of his father, the grantor in the deed of April 24, 1922, leaving him as the only surviving bodily heir of the said grantor other than Andrew B. Gwinn. The effect of the redemption by Elmer Ellsworth Gwinn, Jr., will be to leave the title in the same condition as existed before the foreclosure, except that the lien of the foreclosed mortgage has been removed. *Svalina v. Saravana,* 341 Ill. 236.'' (The italics are ours.) The effect of the Soldiers and Sailors Civil Relief Act was to extend the time for Elmer Ellsworth Gwinn, Jr., to redeem. It did not change any of the other law affecting this proceeding. The appellees, Elmer Ellsworth Gwinn, Jr., and his administrator contend that because the junior mortgage note holders did not redeem within the 12 months' period, their rights lapsed: That the decree was in that respect *res adjudicata* and that these junior mortgage holders were bound by the fact that nothing was there for them and their rights lapsed. We cannot subscribe to that contention, since Elmer Ellsworth Gwinn, Jr., made redemption just as any other person entitled to redeem would do, except the time was extended because of his service in the armed forces of the United States. If there had been no funds remaining over after the satisfaction of the first mortgage, the situation might have been different. But the action of the appellee and his administrator in effect revived the rights of the junior mortgage note holders when the accounting action brought forth funds that might properly be applied to the outstanding indebtedness of the trust. These funds then became subject to the liens and judgments against them. As pointed out in the Supreme Court case *Bank of Springfield v. Gwinn,* the redemption only wiped out the lien of the mortgage, that is, the first mortgage. We agree

18

with the law as set forth in *Thompson v. Davis,* 297 Ill. 11, that if there is a junior mortgage and the property is sold and there is no surplus to pay the junior mortgage and the redemption period runs, the lien of the junior mortgage is at an end. That would be true in this case if there had not been other funds turned up that could satisfy the junior mortgage. Here, $13,130.63 is determined by order of court to be in the hands of W. T. Burnside and subject to the order of the court. These funds are apart and in addition to the amount necessary to satisfy the first mortgage note holder. True, there was a deficiency but that had been assigned to W. T. Burnside. In other words, these funds, namely $13,130.63 still were available for the payment of the junior mortgage note holders and other lien holders.

■■ The trial court was a court of equity. It is axiomatic in a court of equity that he who seeks equity must do equity. After all the debts, liens and judgments against the property, which are enforceable at law, had been paid, the bodily heir of Elmer E. Gwinn was entitled to both the legal and equitable title of the property, but until these debts were paid, the terms of the trust provided that the trustee could continue to execute the trust for the express purpose of paying off these debts. If the Chadwick notes had been a legal and valid obligation at the time of the redemption by Elmer Ellsworth Gwinn, Jr., then the provision making it a condition that they be paid before the conveyance by the trustee to the bodily heir would have been entirely proper. The mere fact that a court imposes a condition, in accordance with the provisions of a trust, would not invalidate that order, where the order is in furtherance of equity and under the terms of the trust, the trustee would have no right to make the conveyance of the legal title to the bodily heir until all the debts had been paid.

19

■ The contention is made that the trust had become inactive or passive and consequently it became a use. An examination of the language creating the trust will disclose the fallacy of this argument. The trust was created because the grantor, Elmer E. Gwinn was heavily involved financially and was unable to pay his creditors. The trust was created for the purpose of the trustee operating the farm and paying off his creditors. The trustee under the powers created, borrowed money and paid off the debts of the grantor in full but that did not complete the trust, since the trustee only substituted other creditors and the money borrowed and the notes and mortgages given were still an obligation against the trust and the land of the trust. The debts still remained due and unpaid and in the unpaid notes were the notes of the junior mortgage note holders.

■ As to the claim of W. T. Burnside for money expended for taxes and improvements, we think that matter is fully decided in the case *Bank of Springfield v. Gwinn*, 390 Ill. 345, where the court said at page 358: "Appellant, at the time he accepted the amount due on his certificate of purchase issued by the master in chancery, and at the time when he purchased at the sheriff's sale and at the time he received the deed from the sheriff under which he now claims the ownership of the property, knew that Elmer Ellsworth Gwinn, Jr., was in the military service of the United States. He was also charged with knowledge of the provisions of the federal statute of October 6, 1942, extending the time within which persons in military service were entitled to redeem from such foreclosure sales. If he chose to speculate upon the chance that Elmer Ellsworth Gwinn, Jr., would never exercise this right of redemption to which he was entitled under the statute, he cannot be heard to complain because the result is unfortunate for him."

For the reasons stated, the decree is affirmed as to all matters except those provisions of the decree ordering the payment of the sum of $2,160.33 to Perry M. Chadwick and John R. Chadwick, and the condition that said sum be paid before confirmation of the deed of conveyance to the said Elmer Ellsworth Gwinn, Jr., as bodily heir of Elmer E. Gwinn, deceased, and as to those provisions, the decree is reversed and remanded with instructions to amend the decree in conformity with this opinion.

*Affirmed in part and reversed in part with instructions.*