Lloyd D. Elliott, Plaintiff-Appellee, v. John S. Valkanet and Beverly C. Valkanet, Defendants-Appellants.

Consolidated with

John S. Valkanet and Beverly C. Valkanet, for the Use of Lloyd D. Elliott, Plaintiffs-Appellants, v. Stanley M. Christian, Sheriff of Lake County, Defendant-Appellee.

Gen. No. 11,131.

Second District, First Division.

October 17, 1958.

Released for publication November 20, 1958.

346

Stagman, Spangler and Greenberg, Eugene T. Daly, M. G. Kaufman, all of Chicago (Erwin H. Greenberg, of counsel) for appellants.

J. E. Bairstow, and Lester F. Collins, of Waukegan, for appellee.

JUSTICE McNEAL delivered the opinion of the court.

On April 3, 1953, John S. Valkanet and Beverly C. Valkanet executed a note for $85,000, and as security for the note they executed a second trust deed on certain lands in Lake County, Illinois. The Valkanets defaulted in their payments on the note and Lloyd D. Elliott, as holder of the note, brought suit to foreclose the second trust deed. The chancellor found that the total amount due and owing from the Valkanets was $117,333.76, together with costs. This amount included, among other items, advancements made by Elliott on

the first trust deed, taxes, insurance and attorney fees. The chancellor ordered the land secured by the second trust deed sold to pay the indebtedness. At the foreclosure sale Elliott bid $90,000 for the property. The chancellor approved the sale to Elliott and found that there was a deficiency of $31,799.29. A deficiency decree for that amount was entered against the Valkanets, and an execution was placed with the sheriff. The Valkanets failed to redeem during the statutory twelve month period. During the additional three month period given judgment and decree creditors, a judgment creditor redeemed by paying the sheriff $102,488.21. In accordance with the statute, the sheriff then held a redemption sale and Elliott bid $131,000 for the property. After paying the judgment creditor his redemption money and the amount of his judgment and costs, the sheriff held the sum of $28,009.54. Elliott claimed that this sum should be applied to reduce his deficiency judgment and brought a garnishment action. The Valkanets claimed that the sum should be turned over to them and filed a petition therefor in the foreclosure case. The two proceedings were consolidated. The chancellor decreed that the sum of $28,009.54 should be turned over to Elliott in reduction of his deficiency, and Valkanets appealed.

The principal question on this appeal is whether the Valkanets or Elliott are entitled to the sum of $28,009.54. Counsel for Valkanets cite no decision which directly supports their contention that the Valkanets are entitled to the sum, and no authority on all fours with this novel situation has been cited. However, we believe that the statute and decisions which have been called to our attention are helpful in solving the question.

Section 18, Chapter 77, Illinois Revised Statutes, 1955, provides that the mortgagors and those holding under them may redeem at any time within twelve

months from the date of the foreclosure sale. Section 20 provides that any decree or judgment creditor has an additional three months in which to redeem by placing an execution with the sheriff and by paying to him the amount for which the property was sold plus interest. The statute provides that the sheriff shall then sell the property under the execution. Section 21 provides that if no one bids more than the amount of the redemption money, the property shall be struck off to the person making the redemption. Section 22 provides that if more than the redemption money is bid, the excess shall be applied on the execution and a certificate issued to the purchaser for a deed after sixty days unless the premises are redeemed by some other decree or judgment creditor. Section 23 provides for successive redemptions at any time within sixty days of the last sale at which the property was sold for more than the amount of the redemption money.

■■ From these sections of the statute it is obvious that it was the intent of the legislature to secure for the debtor the highest price possible for his property and the satisfaction of as many of his debts as possible, and we believe that the redemption laws should be liberally construed so as to effectuate this intent of the legislature.

In the instant case, the mortgagee Elliott bid the property in at the foreclosure sale and he also made the high bid at the redemption sale. At one time there was some question as to whether a mortgagee could redeem from his own sale, but this question was resolved in Strause v. Dutch, 250 Ill. 326. In that case the mortgagee secured a deficiency decree and was permitted to redeem within the three month period. The Supreme Court divided four to three on the question whether the holder of the deficiency decree had a right to redeem. The majority of the Court upheld this right, and at page 331 said:

349

"To hold otherwise would not only have the effect of limiting the decree or judgment secured for the deficiency and putting it in a class by itself, but would work a hardship on the debtor. We have repeatedly held that a liberal construction is to be given to our redemption laws, to the end that the property of the debtor may pay as many of the debtor's liabilities as possible. (Schuck v. Gerlach, 101 Ill. 338; Whitehead v. Hall, 148 id. 253; Strauss v. Tuckhorn, 200 id. 75.) The object in allowing judgment creditors to redeem is to prevent a sacrifice of the debtor's estate, and to allow as many of his judgment creditors as can, to secure the payment of their judgments by making an advance which the debtor cannot or will not make himself. (Sweezy v. Chandler, 11 Ill. 445.) In this case appellants did not redeem, but their failure to redeem within twelve months did not deprive them of all interest in the premises. They still had an equity, which would not be extinguished until the full period of redemption had passed and a deed had issued to the purchaser. (Lightcap v. Bradley, 186 Ill. 510.) It is a matter of common knowledge that real estate values, either from general or local causes, make sudden and material advances. To deprive a creditor in a deficiency decree of the right to redeem as a judgment creditor might in many instances prevent the debtor from securing the full value of his equity and the extinguishment of his debt."

Counsel for the Valkanets rely on the language of the dissenting opinion in Strause v. Dutch, but it should be noted that the majority decision in this case was followed without dissent in the later cases of Crowder v. Scott State Bank of Bethany, 365 Ill. 88, 91, and Nudelman v. Carlson, 375 Ill. 577, 582. Counsel also urge that under equitable considerations the sum in question should be turned over to them. The only equitable consideration which they suggest is that

Elliott purchased the property sold at the foreclosure sale for $90,000 and later purchased the property at the redemption sale for $131,000. They contend that since Elliott bid $90,000 at the first sale and $131,000 at the second sale, his first bid was fraudulent and he should not be permitted to retain the $28,009.54 in question. However, counsel overlook the general rise in land values, a factor which was specifically noted by the Supreme Court in Strause v. Dutch, 250 Ill. 326, at page 332, and they also overlook the fact that the Valkanets received the full benefit of the increased value by having the $28,009.54 applied upon the deficiency judgment against them. The report of proceedings has not been included in the transcript of the record and consequently there is no evidence before us to substantiate any charge of fraud.

As pointed out above, we have been unable to find any decision directly in point, but there are a number of decisions wherein the courts have applied the proceeds of judicial sales toward the payment of various judgments. In Field v. Brokaw, 159 Ill. 560, at 566, the surplus at a foreclosure sale was applied on an execution which the mortgagees had placed in the hands of the sheriff. In Hart v. Wingart, 83 Ill. 282, the surplus at a trustee's sale was turned over to a judgment creditor. In other decisions the courts have required the mortgagors, as a condition of redemption, to repay various advancements which should in equity be repaid. (See Sutherland v. Long, 273 Ill. 309; Erlinger v. Freed, 347 Ill. 588; and Illinois Nat. Bank of Springfield v. Gwinn, 348 Ill. App. 9.)

■ We believe that the chancellor was correct in applying the $28,009.54 against the deficiency judgment. The Valkanets owed the amount of the deficiency judgment and we see no reason why they should not pay it. We are unable to follow their contention that Elliott was guilty of fraud merely because he bid

351

more at the redemption sale than at the foreclosure sale. In any event the Valkanets are receiving the full benefit of the increased bid by having the increase applied against the deficiency judgment. Likewise we are unable to follow the contention that a mortgagee having a deficiency judgment, or other creditors having judgments, are not entitled to have the amounts due them paid out of the proceeds of the redemption sale, because if they were not entitled to have their debts satisfied to the fullest extent possible, then bidding would be discouraged, the property would not bring as high a price as possible, and the mortgagors' debts would not be satisfied to the fullest extent possible. All of this would be contrary to the rule that our redemption statutes should be so construed as to permit the debtor's property to go as far as possible in paying off his debts. If there were any surplus after the payment of debts, then such surplus would belong to the mortgagors, but that is not the situation in this case.

■ Considerable complaint is made that the garnishment proceedings were defective, but the Valkanets themselves petitioned the chancellor to make a proper allocation of the $28,009.54 in dispute and we believe that the sufficiency of the garnishment proceedings is immaterial. The law is settled that when a court of equity once obtains jurisdiction, it will retain jurisdiction to the end that complete justice may be done between the parties. Lloyd v. Karnes, 45 Ill. 62, 71; Martin v. Strubel, 367 Ill. 21; and Pliley v. Phifer, 1 Ill.App.2d 398, 409.) It was within the chancellor's discretion to determine the proper allocation of the fund in controversy.

■ The last contention made by counsel for the Valkanets is that the judgment creditor who first redeemed by paying the sheriff the sum of $102,488.21 was required to pay $4,458.66 more than the statute

352

required, and counsel for the Valkanets claim that said amount should be credited on the deficiency judgment. The only foundation for this contention is a certain "Statement of Facts" filed by counsel for Valkanets in the trial court. Counsel for Elliott filed a motion to strike this ex parte statement from the record and this motion was taken with the case. We have been furnished with no report of proceedings at the trial and we are unable to determine what the evidence was on this point, or even whether any evidence was produced. The order entered by the chancellor is devoid of any ruling on this question and such being the state of the record, we are in no position to review the matter. The motion to strike is allowed. Walden Home Builders, Inc. v. Schmit, 326 Ill. App. 386, 388.

The decree of the chancellor was correct and is affirmed.

Decree affirmed.

DOVE, P. J. and SPIVEY, J., concur.