445 So.2d 84 (1984)
Jessie Mae Busch BONNER, Plaintiff-Appellant,
v.
BANK OF COUSHATTA, et al., Defendant-Appellee.
BANK OF COUSHATTA, Plaintiff-Appellee,
v.
Jessie Mae Busch BONNER, et al., Defendant-Appellant.
Nos. 15912-CA, 15913-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Rehearing Denied February 23, 1984.
Writ Denied April 13, 1984.
*85 Eugene P. Cicardo, Alexandria, for plaintiff-appellant, Jessie Mae Busch Bonner.
Bethard & Davis by James G. Bethard, Coushatta, for defendant-appellee, Bank of Coushatta.
Rogers & Harlow by Graham W. Rogers and David L. White, Bossier City, for defendant-appellee, Nat. Alliance Ins. Co.
Stafford, Stewart & Potter by Russell L. Potter, Alexandria, for third party defendant/plaintiff-appellee, Old Republic Life Ins. Co.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Jessie Mae Busch Bonner, individually and as administratrix of the succession of Robert Bonner, herein appeals adverse judgments rendered in these consolidated cases. We reverse.
Initially, on May 18, 1981, Mrs. Bonner sued the Bank of Coushatta, National Alliance Life Insurance Company, and Old Republic Life Insurance Company to collect *86 $36,306.81 on a credit life insurance policy on the life of her deceased husband which allegedly insured his indebtedness on a promissory note.
On January 9, 1982, the Bank of Coushatta sued Mrs. Bonner seeking executory process on the premises which were mortgaged as security for the loan. This action was subsequently converted by the Bank to an ordinary proceeding and was consolidated for trial with the suit Mrs. Bonner had previously filed. The trial court rejected the demands of Mrs. Bonner on the alleged insurance claim. The court also granted judgment in favor of the Bank in its suit in the amount of $19,962.44, together with 15.5% interest from September 12, 1980, continuing for a period of one year from judicial demand and thereafter 8% interest per annum until paid, together with a delinquency charge of $60.00.
The Bank of Coushatta placed credit life insurance with both of the insurance companies that were sued herein. Old Republic settled prior to trial with Mrs. Bonner for $17,500, and has requested in brief that should we determine to reverse the judgment herein, that credit be given for this sum. Thus, Old Republic was released from the suit and neither of the two remaining defendants, the Bank or Alliance Life, have appealed or answered the appeal, though the Bank, in brief, requested credit for the sum Old Republic paid, should we reverse.
The loan which is the subject of this controversy was confected on January 22, 1980 when Mr. and Mrs. Bonner executed a promissory note in favor of the Bank of Coushatta in the amount of $39,970.80. This note represented a consolidation of outstanding loans which the Bonners owed the Bank in the amount of $16,262.67, a credit life insurance premium of $3,997.08, and a finance charge of some $19,000.
On this date Mrs. Bonner came to the Bank alone as Mr. Bonner was home ill. She dealt with a loan officer, Mr. Cloud, and completed the note according to his instructions. In so doing, she signed the note on the second of several lines provided for the signature of debtors. This line was labeled line "(2)" and had the phrase "co-maker" under it. Also, in a demarcated box located on the face of the note, Mrs. Bonner signed on the "co-maker" line to indicate that she desired credit life insurance. The note clearly showed on its face that a premium for credit life insurance was financed in the note.
Later that same day, Mr. Cloud took the loan papers, including the note, to the Bonner residence where Mr. Bonner was at home alone to have him complete the papers. Mr. Bonner, an illiterate, signed the note with his "X" on line "(1)" as "maker." He also placed his "X" above Mrs. Bonner's name in the credit life box on the line labeled "maker" to indicate that he wanted credit life insurance. Obviously, since he was illiterate, he signed as directed by Mr. Cloud.
The note contained a specific stipulation relating to credit life insurance. This stipulation provided that "(u)nless otherwise indicated, credit life insurance ... if provided, insures only the maker signing on line (1)." (Emphasis added) The note contained no other provisions indicating that the maker was not the insured. As previously indicated, it was Mr. Bonner who signed on line 1, which was designated for the maker.
At the trial, Mr. Cloud, over strenuous objection from Mrs. Bonner's counsel, testified that he told Mr. Bonner at his residence that he would not be insured. He stated he made this decision because of Mr. Bonner's health and lack of employment, and thus sought and obtained insurance on Mrs. Bonner only. Before us, counsel for Mrs. Bonner continues to object that this evidence is an improper attempt to vary the clear and unambiguous language of the loan contract between these parties by parol evidence, contending that the contract on its face clearly shows that Mr. Bonner is the party being insured, and the Bank was thus obligated to attempt to obtain that insurance, rather than to make the unilateral determination that such insurance would not be accepted.
*87 Mr. Cloud's version of the events was accepted by the trial court. In this respect, it is interesting to observe that Mr. Bonner subsequently obtained a $400.00 loan from another officer of the Bank and credit life was issued on that note. It is also interesting to observe that the Bank, in response to an interrogatory inquiring as to whether the credit life language on the note in question was read to Mr. Bonner, responded that to the best of Mr. Cloud's recollection the language was not explained or read to Mr. Bonner "as he was not being insured."
Parenthetically, we note that the Bank argues that one of the reasons Mr. Bonner was not insured was that to insure both, Mr. and Mrs. Bonner would have required a premium of approximately $10,600.00, which would have increased the payments on the note from $333.00 a month to $441.00 a month. Mr. Cloud testified that Mrs. Bonner had made it clear that $350.00 was the highest monthly payment which they could afford.
Of course it is obvious that if, as the note states, only the maker, Mr. Bonner, had been insured, the premium would not have been $10,600.00. Assuming for the sake of argument that the $4,000.00 premium included on the note was the proper premium for Mrs. Bonner, then a premium for Mr. Bonner alone would assumedly be about $6,600.00, or approximately only $2,600.00 above the amount charged. This sum over ten years obviously would not have increased the size of the payments extensively.
The fact of issuance of credit life insurance to Mr. Bonner on the second loan, the response to interrogatories, and the circumstances of the premium we discussed cause us serious concern about whether the trial court was correct in accepting Mr. Cloud's version of the events. However, we do not consider whether the trial court was clearly wrong in this regard for the following reasons.
In order to recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove:
(1) an undertaking or agreement by the insurance agent to procure insurance;
(2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and
(3) the actions of the agent warranted an assumption by the client that he was properly insured.
Redmond v. National Union Fire Ins. Co. of Pittsburgh, 403 So.2d 810 (La.App. 2d Cir.1981); Porter v. Utica Mut. Ins. Co., 357 So.2d 1234 (La.App. 2d Cir.1978). See also Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La. 1973).
The loan contract clearly contained an agreement indicating that Mr. Bonner would be insured. It is uncontroverted that Mr. Cloud did not attempt to place the insurance. Premiums were paid and the only contract which the Bonners had indicated that it was indeed Mr. Bonner who was being insured. Thus, all three requirements of the three-pronged plaintiff's burden in this respect are satisfiedunless the testimony of Mr. Cloud is allowed to vary the terms of the instrument.
It is our view that the terms of the loan contract with respect to credit life insurance are clear and unambiguous and therefore cannot be explained or contradicted by parol evidence to the contrary. LSA-C.C. Art. 2276; Breaux v. May, 392 So.2d 1089 (La.App. 34d Cir.1980), writ den., 398 So.2d 531 (La.1981); Matthieu v. Nettles, 383 So.2d 1337 (La.App. 3d Cir. 1980), writ den., 390 So.2d 202 (La.1980); Paletou v. Sobel, 185 So.2d 95 (La.App. 4th Cir.1966).
In other words, the contract clearly indicates that the Bank agreed to attempt to place credit life insurance with one of the two insurance companies with whom it did business on the life of Mr. Bonner. Mr. Cloud testified that the Bank did not do so because in his judgment Mr. Bonner was *88 uninsurable and the insurance would not be accepted. This testimony is an attempt to vary the clear and unambiguous terms and conditions of this loan contract by parol evidence. By the terms of the contract, the Bank had an obligation to attempt to secure insurance on Mr. Bonner and it failed in this obligation.
The actions of the Bank in failing to seek insurance can only be imputed to the Bank and cannot be imputed specifically to either of the two insurance companies sued since there is no evidence that the Bank represented that it was acting as agent specifically for either company.
It is not disputed that the Bonners were current in their payments at the time of his death, and we have found that a policy of credit life insurance should have existed on his life at that time which would have cancelled the obligation upon his death. These circumstances constitute a valid defense to the Bank's suit to foreclose, and thus the proper resolution herein is a judgment ordering the cancellation of the obligation. Citizens Finance Company of Amite v. Buchanan, 261 La. 1022, 261 So.2d 652 (1972).
Therefore, there will be judgment in these consolidated cases cancelling the obligation herein and ordering the note sued on marked paid and surrendered to the plaintiff upon payment by Mrs. Bonner to the Bank of the $17,500 she has previously received in this cause.
It is therefore ORDERED, ADJUDGED and DECREED that there be judgment in these consolidated cases in favor of Jessie Mae Busch Bonner, individually and as administratrix of the Succession of Robert Bonner, against the Bank of Coushatta cancelling the obligation represented by the note of January 22, 1980, upon payment by Mrs. Bonner of $17,500 to the Bank of Coushatta, upon which occurrence, it is further ordered that the Bank mark said note paid and surrender same to Mrs. Bonner. All costs herein are assessed against the Bank of Coushatta.
REVERSED and RENDERED.
HALL, J., concurs.