453 So.2d 286 (1984)
WINN STATE BANK & TRUST COMPANY, Plaintiff-Appellant
v.
Paul BROWNING, et al., Defendants-Appellees.
No. 16254-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1984.
*287 William M. Russell, III, Winnfield, for plaintiff-appellant.
Culpepper, Teat, Caldwell & Avery by James D. Caldwell, Jonesboro, for defendants-appellees.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
PRICE, Judge.
Plaintiff, Winn State Bank and Trust Company, appeals a judgment in favor of defendant on his reconventional demand in an action originally instituted by plaintiff upon a promissory note executed by defendants, *288 Paul Browning and Kevin Browning.
The record reveals that Paul Browning was in the logging business under the name "Browning Wood Haulers" in Winn Parish, Louisiana. In 1979, Browning obtained a contract with Willamette Industries to haul logs. In order to service the contract it was necessary that Browning purchase additional equipment. Paul Browning, accompanied by his son, Kevin Browning, went to the plaintiff-bank to obtain a loan so as to enable him to purchase the needed equipment. Kevin Browning introduced his father to Mr. Dan Bowker, president of the plaintiff-bank.
During this initial meeting, Mr. Bowker and Paul Browning discussed the preliminary details of the loan. Mr. Browning was advised that collateral was necessary to secure the loan and that accident and health insurance (hereinafter referred to as disability insurance) and life insurance were available. The parties briefly discussed Paul Browning's state of health and the possibility that he would not be able to qualify for disability insurance.
Paul Browning used his home and surrounding acreage as collateral to secure the loan. Mr. Browning and his wife, Gloria Browning, signed a mortgage on the property for this purpose a few days after this meeting.
On June 5, 1979, Paul Browning again met with Dan Bowker to finalize the loan and to sign the promissory note. Kevin Browning was not present at this meeting. Mr. Bowker referred Mr. Browning to Mr. Cooper Little for final processing of the loan. Mr. Little drew up the note and obtained Mr. Browning's signature. Mr. Browning was given a copy of this note. The loan proceeds in the amount of twenty-two thousand dollars ($22,000) were placed into a checking account at that time. Kevin Browning later signed this note and an application for disability insurance around June 20, 1979.
In November 1979, Mr. Browning became ill and was subsequently hospitalized with a rather serious condition. When defendant later made inquiries at the bank as to disability insurance to cover the payments due under the loan, he was advised that such insurance did not exist. On August 26, 1981, plaintiff-bank filed suit on the promissory note seeking to recover the unpaid balance on the loan in the amount of twenty-three thousand fifty-seven and 38/100 dollars ($23,057.38), stating that the installment due on May 15, 1981 had not been paid. Defendants, Paul and Kevin Browning, filed a reconventional demand claiming that they were damaged by the plaintiff-bank's failure to secure disability insurance for Paul Browning.
At the trial on the merits, the parties stipulated as to the genuineness of signatures and the balance due on the note but the testimony of the parties as to the existence of disability insurance was quite conflicting.
Paul Browning testified that at the initial meeting, he advised Mr. Bowker that he had experienced medical problems with high blood pressure in the past. Mr. Bowker told him that there may be some problem in obtaining the disability insurance. However, regarding the later meeting when the note was actually confected, Mr. Browning testified that Mr. Little advised him that he should get as much insurance as possible and that there would be no problem in obtaining disability insurance. Mr. Browning testified that he then told Mr. Little that he wanted the insurance if he could get it. Mr. Browning stated that he was not aware that his son, Kevin Browning, was required by the bank to sign the note.
Mr. Browning stated that in November 1979, he became ill and was later hospitalized. Browning testified that he was diagnosed as having blastomycosis, a woods fungus. Browning underwent surgery and a substantial portion of his left lung was removed. Browning stated he remained in the hospital for approixmately thirty-eight days and underwent chemotherapy treatments at the hospital as an outpatient for approximately thirty days after his release. Mr. Browning testified that he was not *289 aware that he did not have disability insurance until his wife made inquiries at the bank after the onset of his illness and subsequent hospitalization.
At the trial there was absolutely no expert medical testimony as to the nature of Mr. Browning's illness and resulting alleged disability.
Mr. Bowker testified that Paul and Kevin Browning were aware from the preliminary discussions that Kevin was intended to be a co-signer on the note. Mr. Bowker stated that he was under the impression that Paul and Kevin Browning were going into business together and he felt that Kevin would be the strength behind the note. Mr. Bowker stated that due to Paul Browning's previous health problems, he did not feel disability insurance could be obtained for him and therefore made the decision to attempt to place the insurance coverage upon Kevin. He further testified that he instructed Mr. Little that both Kevin and Paul Browning were to sign the note and that the disability insurance was to be placed on Kevin Browning.
Mr. Cooper Little, former vice-president of the plaintiff-bank, testified that Mr. Bowker gave him instructions as to how to properly draw up the note in the presence of Mr. Browning. Little stated that he was instructed that both parties were to sign the note and that the disability insurance was to be placed upon Kevin Browning.
Kevin Browning testified that he simply accompanied his father to the bank in order to introduce him to Mr. Bowker. Kevin stated he was present at this initial meeting and that he was not questioned as to his health, credit history, or collateral for the loan nor was he informed that he was required to sign the loan. Kevin testified that sometime later he signed papers at the bank in connection with another loan but was not aware he had signed the note in dispute and an application for insurance.
It was established that the bank did receive commissions on the insurance purchased in connections with loans.
The note in the instant case is in a standard printed form payable in eighty-four installments commencing on July 15, 1979. The note shows that a premium in the amount of two thousand five hundred eighty-five and 31/100 dollars ($2,585.31) was charged for accident and health insurance. The note contains an option line to request such insurance but this line was not signed by either party. Paul Browning signed the note on line 1 with Kevin's signature on line 2. The note provides that "[u]nless other wise indicated, credit life insurance and credit accident and health insurance, if provided, insures only the maker signing on line (1)."
The evidence shows that Mr. Browning received a letter from the bank dated March 30, 1981. The letter stated in pertinent part that the bank had failed to have defendant sign the option line for accident and health insurance. In order to have the insurance to remain in force, defendant was to sign the letter and return it within a forty-five day time limit. Mr. Browning signed the letter indicating that he desired the insurance and it was promptly returned to the bank. The testimony established that this letter was sent in compliance with a FDIC examination wherein it was discovered that certain notes were lacking an option line for insurance or a signature on this option line if one was contained in the note. The bank employees were instructed to briefly examine the face of the notes for this discrepancy and the files attached to the notes were not examined. As Mr. Browning had signed the note on the line 1 but there was no signature on the insurance option line, the note appeared to be deficient and the letter was routinely sent to him in conformance with the FDIC requirements.
The trial court found that Paul Browning was covered by the disability insurance. The court noted that a premium for the insurance was charged on the face of the note and was financed as part of the loan. The note was signed on line 1 by Paul Browning and provided that the insurance would insure only the maker signing on line 1 unless otherwise indicated. Paul *290 Browning owned the collateral which was mortgaged to secure the loan and although Kevin Browning did not sign the note until a later date, Mr. Browning received the loan proceeds on June 5, 1979.
Having determined that the defendant, Paul Browning, was entitled to disability insurance under the terms of the note, the court concluded that plaintiff-bank was liable for all damages sustained by defendant as a result of plaintiff-bank's failure to obtain such insurance.
In ascertaining the amount of damages, the court noted that the lack of expert testimony made a determination of the length of Mr. Browning's disability difficult. Examining the defendant's testimony, the court noted that as a large portion of his left lung was removed, Paul Browning was "obviously seriously ill." The court stated that "[l]ogging is commonly done in dry weather and great clouds of dust raised by such operations ... are obvious to any traveler in Winn Parish. Dust prevents Browning from working. Thus, I find that Browning was totally unable to return to the logging business at any time since he became ill. The evidence leaves no doubt that logging was his occupation at the time of the loan and would have been his occupation during the term of the loan." The court then found that the damage sustained by Paul Browning was the balance due on the note.
The only issues before this court on appeal are:
(1) Whether the trial court was correct in finding that Paul Browning was entitled to coverage by disability insurance; and
(2) Whether the trial court was correct in finding that the damages sustained by defendant were the balance due upon the note, that is, he would be disabled for the remainder of the loan term.
Upon a review of the record, it is the opinion of this court that the trial court was correct in finding that Paul Browning should have had disability insurance coverage.
Although the testimony is conflicting, it appears that when Paul Browning signed the note on June 5, 1979, he was under the impression that he would have disability insurance.
In construing contracts, it is well established that "... the contract itself is the best evidence of the relationship existing between the parties and the true intention of the parties is to be sought and determined by the language of the contract when the wording is clear." Guillory v. Grain Dealers Mutual Insurance Co., 203 So.2d 762 (La.App. 3d Cir.1967) at page 763. It is also well recognized that a contract "... is to be most strictly construed against the party who prepared it." Lawson v. Martin Timber Company, 238 La. 467, 115 So.2d 821 (1959) at page 828 and numerous citations therein.
The face of the note clearly supports a finding that Browning should have been the insured party. Paul Browning signed the note on line 1. The note specifically stipulated that the accident and health insurance would insure only the maker signing on line 1 unless otherwise indicated. There were no other provisions contained in the note to indicate that Paul Browning was not the insured. A premium was charged for the insurance and was financed as part of the loan. The content of the note left no doubt that Paul Browning was intended to be the insured. This conclusion is further supported by the letter which was sent to the defendant by the plaintiff-bank in 1981 to comply with the FDIC examination.
In a very similar recent case, this court noted the following burden upon a party seeking to recover losses arising from the failure of an insurance agent to obtain insurance coverage:
(1) an undertaking or agreement by the insurance agent to procure insurance;
(2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and

*291 (3) the actions of the agent warranted an assumption by the client that he was properly insured.

Bonner v. Bank of Coushatta, 445 So.2d 84 (La.App. 2d Cir.1984) at p. 87 and numerous citations therein. See also Boothe v. American Assurance Co., 327 So.2d 477 (La.App. 1st Cir.1976) and American Bank and Trust Co. of Houma v. Deroche, 357 So.2d 1176 (La.App. 1st Cir.1978).
In the instant case, as in Bonner v. Bank of Coushatta, supra, the note clearly contained an agreement between the plaintiff-bank and the defendant, Paul Browning, that he would have disability insurance. It is clear from the evidence that Mr. Bowker did not even attempt to place the insurance upon Paul Browning. A premium was paid for the insurance and the note, a copy of which Mr. Browning received, indicated that he was in fact insured. Thus, defendant met his burden of proof regarding the issue of insurance coverage.
However, it is not sufficient that Paul Browning merely show that the plaintiff-bank breached its duty to obtain disability insurance on his behalf. In order to recover, defendant must prove that he was damaged by the failure of the bank to secure such insurance. See American Bank and Trust Co. of Houma v. Deroche, supra.
The trial court found that Browning was seriously ill and totally unable to return to the logging business. The court then awarded damages in the amount of the balance remaining due on the promissory note.
In order to prove that the failure of the plaintiff-bank to obtain insurance damaged him, it was incumbent upon defendant to prove two essential elements. First, the likely content of the policy which should have been issued in favor of defendant and the definition of disability contained therein, and second, that defendant, Paul Browning, is disabled as defined by the policy and will continue to be so disabled for the remainder of the loan term.
At trial, no evidence was introduced as to the likely content of the insurance policy which should have been issued to defendant. It is obvious why the defendant must prove the likely content of the policy and the definition of disability therein. It is well known that there is no standard definition of disability. Rather, the definition of disability can range from the inability to perform one specific occupation to the inability to perform any occupation to which the claimant is reasonably suited by education, training, or experience. In the absence of such evidence, it would be engaging in pure speculation for this court to determine that Mr. Browning was "disabled" under the terms of his particular policy.
Mr. Browning could have easily met this burden of proof by simply issuing a subpoena to the bank or to the insurance company the bank normally deals with, or both, for a copy of the standard policy.
Assuming that defendant had proven the likely content of the policy, the record does not contain sufficient evidence as to defendant's alleged disability.
While the record reveals that defendant was treated by several physicians for his illness, none of these physicians were called to testify on behalf of defendant. Thus, there was no expert medical testimony regarding Mr. Browning's illness and alleged disability.
The sole evidence presented at trial as to the illness and resulting alleged disability was the testimony of defendant, Paul Browning. Browning testified that he was diagnosed as having blastomycosis which necessitated removal of a substantial portion of his left lung.
In essence, defendant's testimony was that he has not been able to work in the logging business since the onset of his illness as the dust aggravates his condition. Although this testimony may be sufficient to prove a disability, since the likely content of the policy was not proven, it is impossible to ascertain from the record whether this illness would have come within the confines of this policy. Furthermore, *292 this testimony does not establish that Browning will be unable to return to the logging business at a future date. Finally, the record established that Mr. Browning had engaged in various occupations in the past and there is no evidence as to whether he will be unable to return to one of these former occupations.
La.C.C.P. Art. 2164 provides that an "... appellate court shall render any judgment which is just, legal and proper upon the record on appeal." It is well settled that an appellate court is empowered under this article to remand a case to the trial court for the taking of additional evidence where it is necessary to reach a just decision and to prevent a miscarriage of justice. See Succession of Brice, 390 So.2d 905 (La.App. 2d Cir.1980), Peterson v. Herndon, 235 So.2d 178 (La.App. 2d Cir.1970), McCullough v. Hart, 424 So.2d 531 (La.App. 5th Cir.1982), Guillott v. Guillott, 326 So.2d 551 (La.App. 3d Cir. 1976), Salley Grocer Co. v. Hartford Accident & Indem. Co., 223 So.2d 5 (La.App. 2d Cir.1968), Hamilton v. Hamilton, 258 So.2d 661 (La.App. 3d Cir.1972), Herbert v. Travelers Indemnity Co., 255 La. 645, 232 So.2d 463 (1970), and Emery v. Cabral, 400 So.2d 340 (La.App. 4th Cir.1981).
"Although a court should always remand a case whenever the nature and extent of the proceedings dictate such a course ... whether or not any particular case should be remanded is a matter which is vested largely within that court's discretion and such power to remand should be exercised only according to the peculiar circumstances presented in each individual case."

Jones v. LeDay, 373 So.2d 787 (La.App. 3d Cir.1979) at p. 789, and cases cited therein.
However, while the appellate court is empowered to remand a case for the introduction of additional evidence, this procedure must be sparingly exercised. Jones v. LeDay, supra, White v. Johns-Manville Sales Corp., 416 So.2d 327 (La.App. 5th Cir.1982), McKinney v. Levy, 212 So.2d 279 (La.App. 3d Cir.1968), Von Cannon v. State, Department of Highways, 306 So.2d 437 (La. App. 3d Cir.1975) and numerous citations therein. The reason behind a party's failure to produce available evidence material to a proper decision is not determinative of whether the power to remand shall be exercised. See Arkansas Louisiana Gas Co. v. Morehouse Realty Co., 126 So.2d 830 (La. App. 2d Cir.1961), Bodin v. Bodin, 392 So.2d 759 (La.App. 3d Cir.1980) and numerous citations therein.
In the instant case, the record is deficient as to the likely content of the insurance policy and definition of disability therein which should have been issued in favor of defendant, Paul Browning. Further, the record does not contain sufficient expert evidence as to defendant's illness and alleged resulting disability. We find that this matter cannot be properly resolved without additional evidence on these particular issues.
For these reasons, the judgment appealed from is reversed and set aside and it is now ordered that this, matter be remanded to the trial court for further proceedings consistent with law and the views expressed above. The costs of this appeal are assessed equally between the plaintiff, Winn State Bank and Trust Company, and defendants, Paul and Kevin Browning.
REVERSED AND REMANDED.