**TECH–FLUID SERVICES, INC., Plaintiff and Appellant,**

v.

**GAVILAN OPERATING, INC., Paiute Oil & Mining Corp., et al., Defendants and Respondents.**

**No. 890067–CA.**

Court of Appeals of Utah.

Feb. 16, 1990.

Harry H. Souvall and Robert M. McRae, Vernal, for plaintiff and appellant.

Clark B. Allred and Gayle F. McKeachnie, Vernal, for defendants and respondents.

Before JACKSON, and ORME, JJ.,

and BULLOCK,[1] Senior District Judge.

ORME, Judge:

Appellant Tech–Fluid Services, Inc. appeals from an adverse ruling concerning the redemption of property it purchased at a sheriff's sale. We affirm.

## FACTS

Paiute Oil and Mining Corporation, the predecessor of respondent Gavilan Operating, Inc., had an ownership interest in an oil and gas well located in Duchesne County. Appellant Tech–Fluid Services, Inc. supplied services and materials to the well for which it was not paid. In November 1984, it filed a mechanics' lien on the well claiming that $69,708 was owing. In January 1985, Tech–Fluid commenced an action to foreclose its lien naming Paiute and several other entities as defendants.

In December 1985, Paiute filed a voluntary reorganization petition under chapter 11 of the Bankruptcy Code. A trustee was subsequently appointed. In February 1986, the state district court entered a judgment of foreclosure as against all of the defendants in the lien action except Paiute. Because of the pending bankruptcy, the district court specifically declined to adjudicate the claim as between Paiute and Tech–Fluid.

In May 1987, Tech–Fluid obtained an order lifting the automatic stay as it applied to the lien action and ordering the trustee to abandon her interest in the well. Thereafter, Tech–Fluid obtained an order from the district court directing the sale of Paiute's interest in the well. No judgment of foreclosure against Paiute was ever entered or docketed prior to the court-ordered sale, a procedure which, while unorthodox, was never objected to by any party. A sheriff's sale of the well was held on July 2, 1987. Tech–Fluid was the only bidder at the sale and purchased the property with a $4,000 credit bid.

In the fall of 1987, Tech–Fluid discovered that Paiute intended to assign its redemption right. Tech–Fluid demanded a quitclaim deed, but Paiute refused. On December 14, 1987, Tech–Fluid obtained from the county clerk a writ of execution instructing the sheriff to execute on Paiute's redemption right. A public sale of the redemption right was set for January 5, 1988.

On December 31, 1987, Paiute assigned its redemption right to Wind River Resources Corporation. On January 1, 1988, the final day of the redemption period, Wind River exercised the right of redemption by delivering to the sheriff's office of Duchesne County 1) an inadequately notarized copy of the assignment of Paiute's right of redemption; 2) an acknowledged notice of redemption setting forth the calculation of the redemption amount, the property to be redeemed, and the basis for its right to redeem; and 3) a cashier's check in the amount of $4,310. The sheriff issued a sheriff's redemption certificate to Wind River.

On January 5 and 6, Tech–Fluid attempted to proceed with the scheduled execution sale and purchase the redemption right. However, the sheriff would not accept Tech–Fluid's bid until the district court determined whether a redemption right could be subject to execution.

On January 8, Tech–Fluid obtained an order directing the sheriff to show cause why he should not issue his deed to Tech–Fluid because of an invalid redemption by Wind River. The district court subsequently held a hearing on the order to show cause and ruled that 1) the assignment was valid, 2) the right of redemption could not be executed upon, 3) Wind River was entitled to redemption because it substantially complied with the statutory requirements for redemption, and 4) Tech–Fluid had no further interest in the well. Tech–Fluid filed a further motion, claiming that Wind River was required to pay not only the

---

**1.** J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (1989).

$4,000 but the entire amount of the lien. The motion was denied and the court signed its conclusions of law and order. Tech–Fluid brought this appeal.

On appeal, Tech–Fluid raises several arguments. First, it argues that, although the trustee abandoned the well, she did not abandon the right to redeem the well in the event of foreclosure. If this were true, the assignment from Paiute to Wind River would be invalid because Paiute would have had no interest in the redemption right, which would have been held, until its expiration, by the trustee. Second, Tech–Fluid argues that the court erred in holding that it could not execute on the redemption right. Third, it argues that the redemption was unsuccessful because Wind River failed to strictly comply with the redemption statute. Finally, Tech–Fluid argues that Wind River was required to pay the entire amount of the lien before it could redeem the property.

## ABANDONMENT OF THE RIGHT OF REDEMPTION

Tech–Fluid argues that the trustee never abandoned her right to redeem the well [2] and therefore Paiute had no right which it could assign to Wind River. On the other hand, Gavilan, as successor to Paiute, argues that when the trustee abandoned her interest in the well, she necessarily aban-

doned any right to redeem which might arise in the event of foreclosure. The trial court heard arguments from counsel at the order to show cause hearing. Subsequent to the hearing, the parties submitted memoranda to support their positions. The court ruled that the trustee had abandoned the well long before the redemption right arose. The evidence and the law support the district court's conclusion and therefore we affirm.

■ Tech–Fluid concedes that a right of redemption is a property interest.[3] Moreover, it is clear that upon the filing of the bankruptcy proceeding, the entire "bundle of rights" Paiute had in the well, including its right to redeem in the event of any sale subject to Utah R.Civ.P. 69, see note 3, supra, became part of the bankruptcy estate.[4] However, we do not agree that the trustee had to explicitly abandon her right of redemption for it to revert to the debtor,[5] any more than she had to explicitly abandon other rights of ownership, such as the right to collect royalties or the right to explore and develop or even the right of possession.

According to the bankruptcy code, "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b) (1989). Courts and commentators

**2.** It is noteworthy that the trustee never claimed she had somehow retained the right to redeem Paiute's interest in the well. On the contrary, we are presented with her affidavit stating she always considered the redemption right abandoned right along with the well. However, that affidavit was not submitted to the trial court, is introduced for the first time on appeal, and, therefore, is not part of the record properly before us. Accordingly, it plays no part in our decision.

**3.** A right of redemption is created in Utah by Rule 69(f) of the Utah Rules of Civil Procedure which provides, in pertinent part, that "[p]roperty sold subject to redemption, or any part sold separately, may be redeemed by the following persons or their successors in interest: (1) the judgment debtor...." Utah R.Civ.P. 69(f)(1). "Successors in interest" clearly include assignees. See Utah R.Civ.P. 69(f)(2)(2).

**4.** When a debtor files for bankruptcy, an estate is created which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541 (1979). According to Collier, "[a]n equity of redemption comes within the scope of 'all legal or equitable interests of the debtor in property.'" 4 W. Collier, Collier on Bankruptcy ¶ 541.07[3] (15th ed. 1989) (quoting 11 U.S.C. § 541 (1979)). See also Layton v. Layton, 105 Utah 1, 140 P.2d 759, 761 (1943).

**5.** Tech–Fluid relies upon § 554(d) of the bankruptcy code which states that "property of the estate that is not abandoned ... and that is not administered ... remains property of the estate." 11 U.S.C. § 554(d) (1989).

have recognized that once abandoned, "the property *stands as if no bankruptcy had been filed* and the debtor enjoys the same claim to it and interest in it as he held previous to the filing of bankruptcy." *In re Cruseturner,* 8 B.R. 581, 591 (D. Utah 1981) (emphasis added). "Thus, abandonment constitutes a *divest[iture] of all interests* in property that were property of the estate." 4 W. Collier, Collier on Bankruptcy ¶ 554.02[2] (15th ed. 1989) (emphasis added).

■ The trial court's conclusion in this case is consistent with *Cruseturner* and Collier. We see no reason why the right to redeem should be treated differently than any other property interest that the trustee has in the property prior to abandonment. On the contrary, it would be anomalous to view the right of redemption as an independent property interest which stayed with the trustee when she abandoned the property to which it pertained. The right to redeem is such that it can only be exercised after property has been sold at a foreclosure sale, and only those with an interest in the property at the time of the sale (or their successors in interest) have a right to redeem. *See* Utah R.Civ.P. 69(f)(1). *See also Layton v. Thayne,* 133 F.2d 287, 289 (10th Cir.1943), *cert. denied,* 323 U.S. 786, 65 S.Ct. 277, 89 L.Ed. 627 (1944). It is inconsistent to suggest that a trustee, having abandoned property and consequently being divested of all interest therein, would still retain a right to redeem, at least absent some expressed and unambiguous intent by the trustee to retain that right.[6] We hold, therefore, that "divestiture of all interests in the property" includes divestiture of the trustee's right to redeem.

Tech–Fluid points to no compelling authority inconsistent with the trial court's and our conclusion. On the other hand, although our attention has been drawn to no case deciding the precise issue before us, the Fourth Circuit has at least stated in dicta that when the trustee abandons her interest in property of the estate, "the property and the right of redemption remains in, or reverts to, the bankrupt." *In re Webb,* 54 F.2d 1065, 1067 (4th Cir.1932).

For the foregoing reasons, we hold that the redemption right belonged to Paiute after the well was abandoned, and that Paiute could properly assign that right to Wind River.

## COMPLIANCE WITH REDEMPTION STATUTE

The district court concluded that Wind River had only to comply substantially, rather than strictly, with the requirements of Rule 69(f)(2) of the Utah Rules of Civil Procedure. The court also concluded that Wind River had substantially complied with those requirements. We agree on both scores.

Rule 69(f)(2) provides that, at the time of redemption,

> the redemptioner must produce to the officer or person from whom he seeks to redeem, and serve with his notice to the officer: (1) a certified copy of the docket of the judgment under which he claims the right to redeem, or, if he redeems upon a mortgage or other lien, a memorandum of the record thereof certified by the recorder; (2) an assignment, properly acknowledged or proved where the same is necessary to establish his claim; (3) an affidavit by himself or his agent showing the amount then actually due on the lien.

Utah R.Civ.P. 69(f)(2).

Tech–Fluid argues that the trial court erred when it applied a substantial compliance test to determine whether Wind River had properly redeemed. Tech–Fluid cites *Mollerup v. Storage Sys. Int'l,* 569 P.2d 1122 (Utah 1977), and argues that strict compliance with the statutory requirements

---

6. We need not decide whether the trustee could have specifically retained the right to redeem the property even while abandoning the property. The trustee in this case chose not to attempt to retain that right, *see* note 2, *supra,* and in the absence of any indication to that effect, the right to redeem automatically passed to Paiute upon abandonment of the well.

was necessary. In *Mollerup*, the Utah Supreme Court stated that "[t]he right of redemption has long been recognized as a substantive right to be exercised in strict accord with statutory terms." *Id.* at 1124.

Gavilan, on the other hand, argues that substantial compliance with the requirements of Rule 69(f)(2) was sufficient under *United States v. Loosley*, 551 P.2d 506 (Utah 1976). In *Loosley*, the Court stated that

> statutes dealing with redemption are regarded as remedial in character and should be given liberal construction and application to permit a property owner who can pay his debts to do so, and thus make his creditor whole, and save his property. Therefore, if a debtor, acting in good faith, has *substantially complied with the procedural requirements of the rule* in such a manner that the lender *mortgagee is not injured or adversely affected*, and is getting what he is entitled to, the law will not aid in depriving the mortgagor of his property for mere falling short of exact compliance with technicalities.

*Id.* at 508 (emphasis added).

 *Mollerup* and *Loosley*, though seemingly inconsistent, are readily reconciled. Very simply, not all redemption provisions are alike. Courts, in evaluating the necessity for strict compliance in these kinds of cases, focus upon the nature of the statutory requirements and the likelihood of prejudice. If failure to adhere to the requirements will affect a substantive right of one of the parties and possibly prejudice that party, then courts require strict compliance. On the other hand, if the requirements are merely procedural and will not prejudice one of the parties, substantial compliance is sufficient.

The Washington Supreme Court addressed these distinctions directly in *Gesa Fed. Credit Union v. Mutual Life Ins. Co.*, 105 Wash.2d 248, 713 P.2d 728, 731–33 (1986) (en banc). The *Gesa* court recognized that the Washington redemption statute involved "a number of provisions, some which confer a statutory right ... and some of which establish a procedure by which that right is perfected.... 'A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right.'" 713 P.2d at 732 (quoting *Miebach v. Colasurdo*, 102 Wash.2d 170, 685 P.2d 1074, 1081 (1984)). The *Gesa* court went on to hold that the technical failure involved in that case was harmless because the failure did not affect a substantive right and appellant was not prejudiced. *Id.* at 732–33. *See also Household Fin. Corp. v. Bacon*, 58 Or.App. 267, 648 P.2d 421, 423 (1982) (technical inconsistencies with statutory requirements did not adversely affect rights of purchaser).

Our Supreme Court in *Mollerup* was construing Rule 69(f)(3) which sets a time limit of six months in which redemption must be made. This provision clearly affects a substantive right of the purchaser. All right, title and interest in the property do not vest in the purchaser at a foreclosure sale until the redemption period has expired. *Local Realty Co. v. Lindquist*, 96 Utah 297, 85 P.2d 770, 772 (1938). "[T]he interest of the purchaser is [merely] an equitable interest, subject to be lost or cancelled or taken away by the debtor or any redemptioner or their assigns upon payment of the sale price with interest." 85 P.2d at 772. If there is no redemption within the prescribed period, the purchaser is then entitled to a conveyance of the property. Utah R.Civ.P. 69(f)(5). To allow redemption beyond the six-month period inevitably compromises and prejudices the purchaser's interest. Consequently, the Court concluded that absent some significant facts to "move the conscience" of the Court, it would not extend the redemption period. *Mollerup*, 569 P.2d at 1124.

*Loosley*, like the case before us, involved Rule 69(f)(2). A brief recitation of the facts in *Loosley* is helpful. The Loosleys failed to pay a government loan. The government then foreclosed on a property interest of the Loosleys. At a foreclosure

sale, the Griffiths purchased the property interest. The Loosleys then assigned their right of redemption to the Hammons, who further assigned the right to Basic Investment, Inc. One day prior to the six-month redemption period, Basic served a notice of redemption on the Griffiths' attorney, accompanied with a check for the correct redemption amount. They did not serve any of the documents specified in Rule 69(f)(2). Eight days after the tender, the Griffiths returned the check and rejected the tender based upon Basic's failure to comply with Rule 69(f)(2).

The trial court in *Loosley* concluded that because Basic had failed to adhere to the requirements of Rule 69(f)(2), their redemption failed. On appeal, the Utah Supreme Court reversed. It recognized that the failure to comply with the technical requirements of Rule 69(f)(2) had no adverse effects on the Griffiths. 551 P.2d at 508. It then held that since the assignment, were proper, Basic had tendered the correct amount within the prescribed time, and the Griffiths had failed to object, the redemption was good. *Id.*

 Based upon the authority discussed above, and in particular *Loosley*, we affirm that substantial compliance is the proper test under Rule 69(f)(2). Moreover, because the Court found substantial compliance in *Loosley*, we are obliged to find it in this case. Tech–Fluid's position is even weaker than the Griffiths' position was in *Loosley*. Wind River not only tendered the correct amount within the redemption period but also tendered some proof of the assignment between Paiute and Wind River and a document entitled "Notice of Redemption" giving additional facts about its entitlement to redeem. Although Wind River could surely have done more to comply with the requirements of Rule 69(f)(2),[7] it complied more fully than did the defendants in *Loosley*. Additionally, as in *Loosley*, Tech–Fluid did not challenge the validity of the tender until several days after the tender and after the redemption period had run.

The requirements at issue in this case are identical to those in *Loosley*. They are procedural in nature and do not affect any substantive rights of the purchaser.[8] Tech–Fluid has failed to demonstrate any prejudice from the failure to strictly adhere to the requirements of Rule 69(f)(2). Consequently, we affirm the district court's holding that Wind River substantially complied with the redemption provisions and that such compliance is all that is necessary.

## EXECUTION ON REDEMPTION RIGHT

Having concluded that Wind River otherwise properly redeemed, we now address whether Tech–Fluid could execute upon Paiute's redemption right. We hold that it could not.

We need not address the more general issue of whether a judgment creditor could ever execute upon the judgment debtor's right of redemption because Tech–Fluid failed to obtain a foreclosure judgment upon which a post-foreclosure sale deficiency judgment could be based and absent such judgment, there was nothing on which any execution could be premised. When Tech–Fluid received relief from the automatic stay regarding the well, it immediately proceeded to obtain an order from the district court to sell Paiute's interest in the well. In its haste, Tech–Fluid did not first obtain a foreclosure judgment determining the correct amount owing.

7. Wind River could have complied more fully in several respects. Although there was no judgment docketed, Wind River could have submitted a copy of the court order directing sale of the well. Moreover, there are no facts in the record to suggest an excuse for the inadequate notarization of the assignment. Finally, Wind River could surely have submitted an affidavit stating the alleged amount due on the lien.

8. The procedural rules of 69(f)(2) were likely created for the benefit and protection of the sheriff, so that he may be guided in what to require to make certain that redemption is in order. *See, e.g., Household Fin. Corp. v. Bacon,* 58 Or.App. 267, 648 P.2d 421, 423 (1982).

■ Under a normal foreclosure scenario,[9] the judgment creditor first obtains a foreclosure judgment determining the correct amount due and owning. Then, property subject to the judgment is sold at a foreclosure sale. *See* Utah R.Civ.P. 69(a)-(e). If the proceeds from the sale are inadequate to pay the entire amount determined in the foreclosure judgment, "[t]he clerk must, as a mere ministerial duty, enter a deficiency judgment against the [debtor]." *First Nat'l Bank v. Haymond,* 89 Utah 151, 57 P.2d 1401, 1405 (1936). Without an initial foreclosure judgment, the clerk has no basis upon which to calculate a deficiency. Thus, the clerk cannot enter a deficiency judgment and absent such a judgment he or she cannot properly issue a writ of execution. Consequently, the clerk in this case improperly issued the writ of execution.

■ . Tech–Fluid should not now be heard to complain. It chose its own course of action by failing to first obtain a foreclosure judgment. We hold that Tech–Fluid was not entitled to execute upon Paiute's redemption right.[10]

## AMOUNT OF REDEMPTION

■ Finally, Tech–Fluid argues that Wind River was obligated to pay not only the amount of the bid but the entire amount of the alleged debt. Rule 69(f)(3) provides in pertinent part:

> The property may be redeemed from the purchaser ... *on paying the amount of his purchase* with 6 percent thereon in addition ... and, if the purchaser is also a creditor having a lien prior to that of the person seeking redemption, *other than the judgment under which said*

*purchase was made,* the amount of such lien, with interest.

Utah R.Civ.P. 69(f)(3) (emphasis added). Tech–Fluid does not claim to have had any lien on the well other than the one which permitted the original foreclosure sale. Under the express language of the statute, therefore, it was only entitled to the amount of the purchase bid plus six percent interest. *See* Madsen, *Equitable Considerations of Mortgage Foreclosure and Redemption in Utah: A Need for Remedial Legislation,* 1976 Utah L.Rev. 327, 343–44.

Once again, Tech–Fluid is bound by its choices, including the decision to bid only $4,000 on the well. As the only bidder at the sale, Tech–Fluid established the value of the well for redemption purposes and placed itself in the predicament it now finds itself. *See Kries v. Allen Carpet, Inc.,* 146 Ariz. 348, 706 P.2d 360, 363–64 (1985) (en banc); *Johnson v. Zahn,* 380 Ill. 320, 44 N.E.2d 15, 17 (1942). According to Rule 69(f)(3), Wind River was only obligated to pay what Tech Fluid paid plus the specified interest.

## CONCLUSION

We affirm the rulings of the district court and hold that: 1) The trustee abandoned her right of redemption when she abandoned the well; 2) Wind River substantially complied with the technical requirements of Rule 69(f)(2) and therefore properly redeemed; 3) having failed to obtain a foreclosure judgment, Tech–Fluid could not execute on the redemption right; and 4) Wind River was only obligated under Rule 69(f)(3) to tender the amount of the purchase plus interest.

9. The mechanics' lien statute specifically provides that mechanics' liens are foreclosed in the same manner, and subject to the same right of redemption, as in the case of mortgages. *See* Utah Code Ann. § 38–1–15 (1988).

10. Having based our conclusion on Tech–Fluid's failure to obtain a foreclosure judgment, we do not mean to suggest that Tech–Fluid would have prevailed had this fact been otherwise. There is apparently little case law addressing the issue of

whether a mortgage creditor may execute on the redemption right of the mortgage debtor. However, Gavilan directs our attention to *Johnson v. Zahn,* 380 Ill. 320, 44 N.E.2d 15 (1942). In *Johnson,* the Illinois Supreme Court held that a lien did not attach to the judgment debtor's equity of redemption arising from the judgment creditor's deficiency judgment. 44 N.E.2d at 19.

JACKSON, J., and J. ROBERT BULLOCK, Senior District Judge, concur.