2001 UT App 251

**Penny BROCKBANK, Respondent and Appellee,**

v.

**James L. BROCKBANK, Petitioner and Appellant.**

**Penny Brockbank, Third-party Plaintiff and Appellee,**

v.

**Cheryl Rachele aka Cheryl Hunsaker, Third-party Defendant and Appellant.**

**No. 20000515–CA.**

Court of Appeals of Utah.

Aug. 23, 2001.

Brent D. Young, Provo, for Appellants.

John E. Schindler, Price, for Appellee.

Before GREENWOOD, P.J., and DAVIS and THORNE, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 This is the third appeal stemming from divorce proceedings between Penny Brockbank (Penny) and James Brockbank (James). As a result of the divorce proceedings, Penny was awarded a money judgment against James and a lien against certain real property to secure the judgment. The subject of the present appeal is the trial court's order regarding the sheriff's sale of the property, its purchase at the sale by Penny, and its subsequent redemption by Cheryl Rachelle (Cheryl), James's friend and assignee. The trial court, by summary judgment, vacated the sale, restored title to James, and allowed Penny to retain the redemption amount paid by Cheryl. We reverse.

## BACKGROUND[1]

¶ 2 On February 18, 1998, the trial court entered a supplemental decree (the Decree) in the divorce proceedings between Penny and James. The Decree awarded James certain real property, including property located at 48 East 100 North, Price, Utah (the Property). The Decree also awarded Penny a judgment against James of approximately $43,000.[2]

¶ 3 The Decree granted Penny a lien on all of James's real property to secure her judgment. Penny caused a writ of execution to be levied against the Property, which was valued at $45,000. Penny was the sole bidder at the sheriff's sale and credit bid $15,000 for the Property. A $2,000 to $3,000 mortgage balance remained on the Property at the time of the sheriff's sale. Following the sale, Penny took possession of the Property.

---

1. The facts are not disputed by the parties.

2. This court affirmed the judgment in the first appeal. *See Brockbank v. Brockbank,* 1999 UT App 116 (April 8, 1999) (memorandum decision) (*Brockbank I* ).

¶ 4 James lacked the necessary funds to exercise his right of redemption under Rule 69 of the Utah Rules of Civil Procedure. He, therefore, assigned his right of redemption to Cheryl, who paid him $100 for the assignment. He also attempted to transfer the Property to Cheryl by warranty deed. Cheryl redeemed the Property for $16,653 ($15,000, plus attorney fees and costs) by tendering the payment to Penny. Penny accepted the payment, and Cheryl took possession of the Property.

¶ 5 The day after accepting the payment from Cheryl, Penny added Cheryl as a third-party defendant to the divorce action. Penny claimed James's assignment of his right of redemption to Cheryl was a fraudulent transfer under the Utah Uniform Fraudulent Transfer Act, see Utah Code Ann. §§ 25–6–1 to –13 (1998), and should be voided. Penny credited the $15,000 redemption payment against the judgment James owed her, and never returned the redemption money to Cheryl. In addition, a stipulation executed by the parties acknowledges that James's debt to Penny was reduced by $15,000 by the "Writ of Execution."

¶ 6 After an order to show cause hearing, the trial court held James in contempt for violating a court order prohibiting him from conveying or pledging his real property when he deeded the Property to Cheryl and assigned his right of redemption to her. James appealed this contempt finding in the second appeal. See Brockbank v. Brockbank, 2000 UT App 163, 2000 WL 33244135 (June 2, 2000) (memorandum decision) (Brockbank II ). In Brockbank II, we did not address whether the assignment of the right of redemption was a transfer of real property in violation of the trial court's order, but concluded that James violated the trial court order when he attempted to transfer the property to Cheryl by warranty deed. See id. Based on these grounds, we affirmed the contempt order. See id.

¶ 7 While the second appeal was pending, Penny filed a motion for summary judgment against Cheryl, seeking to set aside James's assignment of his right of redemption as a fraudulent transfer. Cheryl filed a cross-motion for summary judgment, arguing Penny waived any objection to the tender and ratified the assignment by accepting and retaining the redemption amount. The trial court concluded the transfer of the right of redemption was fraudulent and granted Penny's motion and denied Cheryl's motion. The trial court declared that the assignment was void and of no effect and ordered that James retain title to the Property. Penny was allowed to keep the redemption proceeds.

¶ 8 James and Cheryl appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 9 James and Cheryl challenge the trial court's conclusions of law. Specifically, they argue the trial court erred in concluding that Cheryl and James had committed fraud under the Utah Uniform Fraudulent Transfer Act (the Act), when James transferred his right of redemption, which Cheryl exercised after the sale of the Property. They further argue Penny waived any objection to the assignment by accepting and retaining the redemption price. Thus, James and Cheryl contend the trial court erred when it rescinded the sale and allowed Penny to keep the redemption proceeds. James and Cheryl claim the undisputed facts demonstrate that Cheryl, James's successor in interest, properly exercised the right of redemption and that Cheryl should now hold title to the Property.

¶ 10 "Summary judgment should be granted only if there has been a showing 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Booth v. Attorneys' Title Guar. Fund, 2001 UT 13, ¶ 28, 20 P.3d 319 (quoting Utah R. Civ. P. 56(c)). "In reviewing the district court's grant of summary judgment, 'we review the court's legal decisions for correctness, giving no deference, and review "the facts and inferences therefrom in the light most favorable to the nonmoving party." '" Id. (citation omitted). When the facts are not in dispute, " 'we review [the] trial court's conclusions as to the legal effect of a given set of ... facts for correctness.'" Bradford v. Bradford, 1999 UT App 373, ¶ 10, 993 P.2d 887 (citation omitted), cert. denied, Bradford v. Demita, 4 P.3d 1289 (Utah 2000).

## ANALYSIS

### I. PENNY'S MOTION FOR SUMMARY JUDGMENT

#### A. Fraudulent Transfer

¶ 11 The trial court granted Penny a lien on the Property and instructed her that if she wished to collect on her judgment against James she would have to foreclose on the Property. Penny pursued foreclosure and the Property was sold to her at the sheriff's sale. Penny and appellants do not assail the propriety of the sale or Penny's purchase of the property. Penny attacked the results of the sale only after Cheryl exercised the right of redemption when Penny filed the third party complaint against Cheryl and sought to set aside the sale.

¶ 12 Penny owned the Property, subject only to the exercise of the right of redemption provided by Rule 69 of the Utah Rules of Civil Procedure. Rule 69 allows the judgment debtor, or his or her successor in interest, within six months of the sale, to redeem real property by paying the purchaser of the subject property the amount of the purchase at the sale plus a surcharge and other specified costs. *See* Utah R. Civ. P. 69(j)(3). The right of redemption, however, was not available to Penny as a means of satisfying Penny's claims against James—she could not execute on it. Consequently, the transfer of the right of redemption cannot be a fraudulent conveyance as to Penny because it is an asset that is not reachable by Penny. To allow a foreclosing creditor to control the right of redemption is inconsistent with the purpose of that right—to provide a check on bids that are well below market value.[3]

¶ 13 The case of *Tech–Fluid Servs., Inc. v. Gavilan Operating, Inc.*, 787 P.2d 1328 (Utah

---

3. This policy is supported by several other jurisdictions. *See Rose v. Loughborough*, 182 Ark. 782, 32 S.W.2d 1066, 1068 (1930) ("The [Arkansas] redemption statute now under consideration is a remedial statute, and should be liberally construed to accomplish its beneficent purpose. The judgment creditor always has it in his power to make the land sold under execution of his judgment bring its real value, so that, if a redemption is effected, he cannot be hurt."); *Fields v. Danehower*, 65 Ark. 392, 46 S.W. 938, 939–40 (1898) ("There is little reason why a creditor should be allowed to ... subject the property ... to repeated sales under his mortgage.... There is nothing in the statute to support the contention that when a redemption is made the mortgage lien is restored, and remains upon the property for any unpaid balance of the debt.... The language of this statute granting the right to redeem upon payment of amount for which the property sells, with interests and costs of sale, means, we think, an absolute redemption, and the mortgage lien is not revived by such redemption."); *O'Neil v. General Sec. Corp.*, 4 Cal.App.4th 587, 5 Cal. Rptr.2d 712, 720–21 (1992) ("[California] statutes are designed to maximize the amounts credited against the debt, because the right of redemption discourages bidders at the judicial sale from intentionally underbidding for the property. This is because the redemptioner can recapture the property free of the lien for the amounts paid at the judicial sale (plus certain costs).... This discourages bidders from bidding less than the fair market value of the property."); *Elliott v. Valkanet*, 19 Ill.App.2d 346, 153 N.E.2d 588, 590 (1958) (recognizing that the purpose of the Illinois redemption statute "was ... to secure for the debtor the highest price possible for his property and the satisfaction of as many of his debts as possible, and ... redemption laws should be liberally construed so as to effectuate this intent"); *Anderson v. Anderson*, 129 Ind. 573, 29 N.E. 35, 35 (1891) ("The principle which controls the present case may be thus stated: The sale on a judgment or decree exhausts it as to the property sold, and the judgment creditor cannot, after redemption by a junior incumbrancer, resell the land to enforce payment of an unsatisfied part of his judgment.... The object of the law is to compel creditors to bid a fair and adequate price for the debtor's property, and to prevent them from bidding a small sum, and, in the event of a redemption, again subject the property to sale." (internal citations omitted)); *see also* Edgar Noble Durfee & Delmar W. Doddridge, *Redemption from Foreclosure Sale—The Uniform Mortgage Act*, 23 Mich. L.Rev. 825, 851–52 (1925) ("We have seen that the principle purpose of the redemption statute, and the only purpose which it serves in a superior way, is the encouragement of adequate bidding at the sale. Obviously this purpose is defeated by holding that liens are revived, or that a deficiency decree will effectively charge the land."); *see generally* Rex E. Madsen, *Equitable Considerations of Mortgage Foreclosure and Redemption in Utah: A Need for Remedial Legislation*, 1976 Utah L.Rev. 327. *But see Kries v. Allen Carpet, Inc.*, 146 Ariz. 348, 706 P.2d 360, 362 (1985) ("[The effect of Arizona's redemption statute] is to restore [the judgment debtor] to his original position as owner of the property. His property can, therefore, again be reached by the judgment creditor, it making no difference that the property is the same as that sold before.").

Ct.App.1990), is instructive. In that case, the creditor, Tech–Fluid, was the sole bidder at a sale executing its mechanic's lien on Paiute's, the debtor's, property. *See id.* at 1330. After the sale, Paiute sold its right of redemption to Wind River Resources Corporation, which redeemed the property for the bid amount. *See id.* Tech–Fluid then sued both Pauite and Wind River claiming that the full amount of the lien must be paid in order to redeem the property. *See id.*

¶ 14 This court ruled that Tech–Fluid had created its dilemma with its low bid and could not complain that the lien was not paid in full. *See id.* at 1335. On the issue of redemption, this court stated:

> As the only bidder at the sale, Tech–Fluid established the value of the well for redemption purposes and placed itself in the predicament it now finds itself. According to Rule 69(f)(3), Wind River was only obligated to pay what Tech–Fluid paid plus the specified interest.

*Id.* (citations omitted). According to *Tech–Fluid,* the high bid at the sheriff's sale sets the redemption amount, which is the only amount guaranteed to the creditor for the first six months following the sale. *See* Utah R. Civ. P. 69(j)(3). As *Tech–Fluid* and the present case exemplify, this is the risk a creditor takes when bidding less than market value. The amount bid, however, is within the creditor's control. Penny, by bidding a higher price, would have had to credit more against James's debt; however, she would also have received a greater amount of money had redemption occurred, or she would have retained the property valued at $45,000.

¶ 15 In sum, Penny's collection of only $15,000 of her judgment after the sheriff's sale was not the result of appellants' fraudulent acts, but rather was the result of her bid and the operation of the right of redemption as defined by Rule 69. We thus conclude the Act is not applicable to James's transfer of his right of redemption to Cheryl, notwithstanding any actual, subjective intent of James "to hinder, delay, or defraud" Penny.[4] Utah Code Ann. § 25–6–5(1)(a) (1998).

### B. Waiver

■ ¶ 16 The undisputed facts also establish a waiver of Penny's claim of a fraudulent transfer because she accepted the redemption price and applied it to James's debt. In *Bennion v. Amoss,* 530 P.2d 810 (Utah 1975), the Utah Supreme Court stated:

> "Persons interested in a judicial sale or the property sold may by disclaimer waive defects in such sale, even as to its fraudulent character, and thereby estop themselves from later challenging its validity. As a general rule, any act of participation by one for whose benefit the sale is made which shows approval of or acquiescence in the proceedings for the sale of land, ... may, under the conditions necessary to invoke waiver to estoppel, preclude him from challenging the validity of the sale for defects short of those which would render it a complete legal nullity."

*Id.* at 812 (quoting 47 Am.Jur.2d *Judicial Sales* § 400 (renumbered at 47 Am.Jur.2d *Judicial Sales* § 371 (1995))). In the present case, Penny waived her objections when she accepted the tender from Cheryl. Even though Penny objected to the transfer of the right of redemption, she continued to retain the funds, applied them to James's debt, and finally stipulated that the funds resulted from the writ of execution on the property. In sum, Penny has received the benefit of the sale and now seeks to set it aside. She has waived her right to do so.[5]

4. Penny argues, in conjunction with her claim of fraud, that the sale of the right of redemption must be set aside because it violated the trial court's previous order preventing James from disposing of his property. However, we addressed this issue in *Brockbank II.* The trial court gave James the option of obtaining a reconveyance of the property from Cheryl to purge the contempt finding or of serving time in jail. James chose the latter option and served the jail time. We concluded: "Because the trial court's contempt order has been satisfied, the trial court cannot impose any further penalties for that contempt and *cannot mandate that the parties take any further action.* Therefore, this court can provide no relief affecting the rights of the parties, and the issue is moot." *Id.* (emphasis added).

5. The trial court's solution is problematic. Penny was allowed to keep the redemption money, even though no redemption could have taken place if the transfer of the right of redemption had been set aside as fraudulent. However, we

## II. CHERYL'S MOTION FOR SUMMARY JUDGMENT

¶ 17 James and Cheryl contend the undisputed facts demonstrate Penny waived any objections to Cheryl's exercise of the right of redemption, and therefore, the trial court should have granted Cheryl's motion for summary judgment placing title to the Property in Cheryl's name. We agree. Because Penny made no other objection to Cheryl's compliance with Rule 69, we hold that the right of redemption was properly exercised, and Cheryl's motion for summary judgment should have been granted by the trial court. *See United States v. Loosley,* 551 P.2d 506, 508 (Utah 1976) (stating "if one fails to state his objections to a tender, he is deemed to have waived them"). Accordingly, on remand, we instruct the trial court to enter an order granting Cheryl's motion for summary judgment placing title to the Property in her name.

## III. ATTORNEY FEES

¶ 18 Penny requests attorney fees in conjunction with her appeal. However, she cites no authority in support of her request, and having failed to prevail on any issue raised in this appeal, she is not entitled to attorney fees. *See Smith v. Smith,* 1999 UT App 370, ¶ 18, 995 P.2d 14 (awarding attorney fees in domestic case to party who prevailed at trial

court and on appeal), *cert. denied, Smith v. Smith,* 4 P.3d 1289 (Utah 2000).

## CONCLUSION

¶ 19 The Uniform Fraudulent Transfer Act does not apply to the circumstances of the present case, and therefore the trial court erred in granting Penny's motion for summary judgment. We hold that the undisputed facts demonstrate that Cheryl properly exercised her right of redemption and that the proceeds of the sale were properly paid to Penny, who credited the proceeds to James's debt. Further, Penny, by applying the proceeds to James's debt, waived any defects in the sheriff's sale. Therefore, we remand the case to the trial court with instructions to enter an order granting title to the Property to Cheryl. Finally, because Penny has not prevailed on appeal, we deny her request for attorney fees incurred on appeal.

¶ 20 WE CONCUR: JAMES Z. DAVIS, Judge, and WILLIAM A. THORNE, JR., Judge.

---

need not address the trial court's equitable solution as we have determined that the transfer was

not subject to the Uniform Fraudulent Transfer Act.