COOKS, Judge.
Colfax Banking Company appeals the trial court’s decision in favor of Elvis Maxwell, finding it owed the final installment on a loan owed by Maxwell. For the following reasons, wé affirm.
FACTS
Colfax Banking Company (hereafter Bank) accepts the trial court’s statement of the facts in its Reasons for Judgment which we elect to recite in substantial part as follows:
ELVIS B. MAXWELL (Maxwell) commenced this suit on November 10, 1995, against COLFAX BANKING COMPANY (Bank), to recover damages against the Bank for its alleged failure to secure credit accident and health insurance coverage upon him to pay the installments of a loan *829 made by the Bank to him on February 1, 1991. Maxwell complained that Rthe Bank’s conduct constituted unfair trade practices and he should be awarded penalty damages and an attorney’s fee. The Bank filed peremptory exceptions of pre-seription/peremption to the Title 51 claim. It also claimed a personal exemption from liability under LSA-RS 51:1401, et seq arguing the transactions giving rise to this suit were subject to the jurisdiction of Louisiana Commissioner Financial Institutions, pursuant to LSA-RS 51:1406(1).
Most of the relevant facts are not in dispute. On February 1, 1991, Richard P. “Ricky” Smith, Jr. was a loan officer at the Bank’s Pollack branch and borrowed $12,-165.73.[1] Mr. Maxwell advised Mr. Smith that he wanted to purchase credit accident and health insurance. Mr. Smith calculated the premium based upon the amount Mr. Maxwell was borrowing. There was testimony that the term of the loan and the amount of the payments were factors which affect the premium. The calculation is made by use of a machine that has a program to accomplish the same. A premium of $172.80 for accident and health insurance was added to the loan proceeds to yield a sum of $12,338.53 as the amount which was financed. The name of the proposed A & H insurer, “Heritage” and a number “38489” were written on the note by Mr. Smith. The premium was also mentioned on the Loan Disclosure Statement.[2]
The note form used (Plaintiffs Exhibit-1) was a precomputed note. The contract amount or total of payments was $14,-665.88. There were eighteen (18) monthly installments due on the fifteenth (15th) day of each month commencing March 15, 1991. The first seventeen (17) installments were $320.00 and the last installment was $9,225.88. Precomputed interest in the amount of $2,327.35 was indicated as “Int” on the note and shown as the finance charge on the Loan Disclosure Statement. Mr. Smith admitted that he incorrectly wrote $300.00 as the amount on the first ^seventeen (17) payments, instead of the correct amount of $320.00. The court finds that .Mr. Maxwell was mistaken in his belief that the $20.00 monthly difference between the note and Disclosure Statement was for the purpose of paying the accident and health insurance premium.
The date of the loan was February 1, 1991. However, the loan was not recorded in the bank’s records or “booked” until February 4, 1991. As was explained by Mr. Michael S. Newton, when Mr. Maxwell’s loan was booked, the loan clerk had refunded the premium of $172.80[3] on February 5, 1991, because the loan officer incorrectly sold accident and health insurance without selling credit life insurance also. Therefore, there never was any accident and health insurance policy issued to Mr. Maxwell in connection with the February 1, 1991 loan. There was no evidence that the loan clerk would have or did con- ’ tact Mr. Maxwell. There was no evidence that Mr. Maxwell was provided with a copy of any loan history prior to the filing of this suit.
Mr. Maxwell testified that he had an on the job disabling injury on April 16, 1992, and as of the date of the trial, was still under the doctor’s care. This was not disputed by the Bank. Prior to his injury, Mr. Maxwell had paid the Bank thirteen (13) payments of $320.00 each. Shortly after his April 16, 1992 accident, Mr. Maxwell called the Bank and advised Mr. Newton of the occurrence. Shortly after this, the Bank advised Mr. or Mrs. Maxwell *830 that there was no A & H insurance coverage on the loan. On July 10, 1992, Mr. Maxwell “paid off” the February 1, 1991, loan by the proceeds of another loan with lower monthly payments.[4]
The date upon which Mr. Maxwell was first | ^advised of the Bank’s failure to secure an A & H insurance policy was disputed. Mr. Maxwell testified it was not until after his April 16,1992, accident that he was first advised that there was no A & H insurance to pay on the February 1, 1991 loan. Mr. Smith testified that he had no independent recollection of any communications he might have had concerning the lack of A & H insurance coverage. Mr. Smith could only offer testimony concerning what his general practice would have been in such a situation. The Court is convinced by the evidence offered by both of the parties that more probably than not, the Bank failed to inform Mr. Maxwell that it had not secured A & H insurance as he had requested until after he sustained his disabling injury.
Another matter in dispute was the amount of the benefits of the A & H insurance if the Bank could have secured a policy for Mr. Maxwell. Mr. Maxwell testified that it was his understanding that the A & H insurance coverage would “pay off the note” if he was injured and that Mr. Smith told him this. Mr. Smith testified that he did not recall telling Mr. Maxwell anything about the details of the insurance coverage. Mr. Maxwell admitted that Mr. Smith had not told him specifically that the A & H insurance would pay the $9,225.88 balloon payment, but his understanding was that the insurance would “pay off the loan” and this was an assumption he made.
Both Mr. Smith (the trial court incorrectly stated Mr. Maxwell) and Mr. Newton testified that even if Mr. Maxwell would have had the A & H insurance coverage, it would not have paid the balloon payment. They based their respective opinions on the amount of the premium and the method of the premium calculation.
At trial neither party introduced a copy of an accident and health insurance policy such as may have been issued to the plaintiff if the Bank had secured one. Although stating during trial that the policy and not the witnesses’ testimony would be the best evidence of what should be paid, the trial court concluded a sample policy was not required to decide the case. Because both 15parties failed to introduce a sample policy, the trial court presumed that the sample policy would not have aided either party.
The trial court concluded the Bank breached its obligation to provide accident and health insurance. The Bank did not dispute the award of four payments in the amount of $320.00 each. However, the Bank did dispute the trial court’s finding that “the A & H insurance policy if secured, would have paid the final installment of $9,225.88” owed on the note.
ANALYSIS
The Bank does not dispute its liability for failing to secure A & H coverage for plaintiff. The only issue seriously advanced by the Bank concerns its obligation, if any, to pay the “balloon” balance on the note for its admitted failure to secure the requested coverage.
The Bank contends plaintiffs decision not to introduce a specimen of the A & H policy was critical to his case in chief; and by failing to do so he fell short of carrying his burden of proof. Because of this alleged failure, the Bank asserts it did not deem it necessary to introduce any further evidence after plaintiff rested.
The Bank relies on Winn State Bank & Trust Co. v. Browning, 453 So.2d 286 (La.App. 2 Cir.1984) and argues vehemently that a plaintiff such as Maxwell is required to produce a sample policy to prove his case. In Winn, the debtor signed a promissory note binding himself to pay eighty-four installments to satisfy the underlying indebtedness. A short time later, the debtor became ill and could not meet his monthly payments. The bank instituted an action to recover the balance owed on the promissory note. The *831 debtor, filed a |6reconventional demand for damages alleging the bank failed to obtain disability insurance to protect the loan as requested. The trial court found the debtor was entitled to disability coverage and the damage the debtor sustained for the bank’s failure to procure such coverage was the balance due on the note. The court of appeal affirmed the trial court’s liability finding but remanded the case to determine if the debt- or’s disability would persist beyond the payment terms recited in the note.
The Bank contends Winn “directly addresses the question before this Court.” We disagree. The court in Winn found there was no expert evidence that the debtor was disabled under the definition of the policy, nor could it determine whether the debtor would be disabled for the duration of the payment period provided in the promissory note, which extended over a term of eighty-four months. The Winn court found the record was “deficient as to the likely content of the insurance policy and definition of disability therein” and “the record [did] not contain sufficient expert evidence as to defendant’s illness and alleged resulting disability.” Further, the Winn court listed the only issues before it as the following:
1.' Whether the trial court was correct in finding that [the debtor] was entitled to coverage by disability insurance; and
2. Whether the trial court was correct in finding that the damages sustained by defendant were the balance due upon the note, that is, he would be disabled for the remainder of the loan term.
Winn is distinguishable from the present case.
Without a sample policy in evidence, the trial court decided this |7case based on the testimony of the witnesses. Maxwell testified Ricky Smith did not communicate to him any limitations or exclusions in the policy which might have alerted him that the requested coverage would not include satisfaction of a balloon payment. Maxwell’s impression was if he were injured and unable to return to work then the remaining monthly payments, including any balloon installment, owed on the note would be paid during the time he was unable to return to work. Maxwell and his wife testified they were not advised by Smith or any agent of the Bank that the A & H policy would only cover seventeen monthly payments if he were injured. Maxwell did not receive a copy of the pokey or a sample pokey. Ricky Smith testified he could not reeak the communications he had with Maxwek concerning the A & H insurance coverage. He could offer testimony only as to what his general practice would have been in a similar situation.
We note the premium calculated by the Bank was based on the entire amount of the loan. The trial judge apparently found more credible Maxwek’s representations concerning the extent of the obkgation undertaken by the Bank. The Bank did not present any evidence showing either that it was impossible to obtain disabikty insurance to cover Maxwell’s final bahoon installment on the note or that such coverage is not available in the insurance industry. The sample pokey which the Bank urges Maxwek should have been eompeked to introduce, even if it excluded balloon payment coverage, would not prevent the trial judge from concluding the Bank obkgated itself to secure “total” coverage in this instance. Weighing the credibility of the witnesses, the trial judge obviously resolved that the Bank indeed had undertaken an obkgation Rto obtain such coverage. Its subsequent failure to do so combined with its even more egregious failure to inform Maxwek that it did not intend to obtain any pokey compounded the eventual loss sustained by Maxwek.
DECREE
For the above reasons, the judgment of the trial court is affirmed. Ah costs of this appeal are assessed against defendant-appellant, Colfax Banking Company.
AFFIRMED.

. The loan proceeds were $12,165.73, but of that, $100.00 was charged for a filing or recording fee.

. The Loan Disclosure Statement form used was not appropriate for this loan. The form states that credit disability insurance was not obtainable through the Bank. There was no blank on the form for this type of insurance.

.There was no evidence or testimony offered to explain why the Bank did not credit Mr. Maxwell with the precomputed interest on the $172.80 A & H insurance policy which the Court estimates to be approximately $32.59. The Bank canceled the A & H insurance and the Court finds that the rebate of principal and interest for such premium would not he reduced by the rules of 78’s, nor the 90% rebates provided in the promissory note.

. No details of this activity was presented to the Court.